FIRST NATIONAL BANK OF BELLVILLE v. W. E. WHEELER, ET AL.

No. 1381.

**1. Subrogation—Principal, Surety and Creditor.**

The right of a creditor, by subrogation, to the benefit of security, given by his principal debtor to a surety, is measured by the surety's right, as fixed by the terms of the instrument. He may have the benefit of security given for the payment of the debt, but not of that given for bare indemnity of the surety, where the latter's rights do not arise until he has paid the debt. See contract the construction of which upon this point is held to present difficulties.

**2. Same.**

See mortgage of cattle by principal debtor to his sureties which—in view of the fact that both principal and sureties were insolvent, and a part of the property was delivered to the sureties, to be sold and applied on their debts—was construed to be a security for the debt, to which the creditor was entitled to be subrogated; and not a mere personal indemnity, available to the surety only on his payment of the debt, and in which the creditor would acquire no title by subrogation.

**3. Same.**

Where security is given for a surety's benefit, by a mere contract of indemnity, the surety, who has the mortgaged property in his possession or in possession of a trustee for him, when his liability for the debt becomes fixed by the insolvency of the principal, would have the right to apply it or compel its application to the payment of the ·debt, and in such case, it seems the debtor will acquire by subrogation the same right.

**4. Trustee—Diversion.**

Where a trustee of property transferred to him to secure creditors diverted it, placing it in the hands of others who had notice of the trust, the parties so receiving and appropriating it became liable to the beneficiaries for its value.

APPEAL from Lampasas. Tried below before Hon. W. A. BLACKBURN.

The instruments referred to in the petition as exhibits "A" and "B" were as follows:

"EXHIBIT A.

"The State of Texas,
County of Mason.

Know all men by these presents
that I, Wm. E. Wheeler, of the
county and State aforesaid, for
and in consideration of twenty-three thousand dollars, which I owe to
several parties, as shall be hereinafter more fully explained, and in fur-
ther consideration of one dollar this day to me in hand paid by Wm.
Geistweidt, Christy Crosby, Franz Bernhard, Fritz Kothman and Mar-
tin Moran, of the county of Mason and the State of Texas, I have this
day granted, bargained, sold and delivered, and by these presénts do
grant, bargain, sell and deliver unto them, the said Wm. Geistweidt,
Christie Crosby, Franz Bernhard, Fritz Kothman and Martin Moran,
five thousand head of cattle, ranging in and about my pasture, situated in
the counties of Mason, Menard and McCulloch, in said State, said cattle
being branded flying H on the left side, and in different ear marks, togeth-
er with all the rights, members, hereditaments and appurtenances to the
same belonging or in any wise appertaining. And I hereby bind myself,
my heirs, executors and administrators to warrant and forever defend
the title to the said cattle unto the said Wm. Geistweidt, Christie Crosby,
Franz Bernhard, Fritz Kothman and Martin Moran and each of them
against any and all persons lawfully claiming or to claim the same or any
part thereof.

"The conditions of the foregoing obligation and conveyance, however,
are such: Whereas, I am indebted to Emil Wahrmand, Sr., of Freder-
icksburg, Gillespie County, Texas, in the sum of three thousand and fifty
dollars; to August Wahrmand of county and State last aforesaid, in the
sum of three hundred and fifty dollars; to Adolph Wahrmand or his
heirs of the same county and State, in the sum of four hundred dol-
lars; to Louis Fischer of the same county and State, in the sum of three
hundred dollars; to Paul Harnisch of said county and State, in the sum
of nine hundred dollars; to F. Loudon of the same county and State,
in the sum of four thousand dollars; to T. D. Smith of the same county
and State, in the sum of six thousand nine hundred dollars; to Mrs. Anna
Martin & Son, of Mason County, Texas, in the sum of fifteen hundred dol-
lars; and to The First National Bank of Bellville, Texas, in the sum of five
thousand dollars, together with interest accrued thereon. And, whereas,.
I have executed and made several promissory notes to the aforesaid par-
ties, for the amounts in which I am indebted to them, as aforesaid, and
whereas, the aforesaid Wm. Geistweidt and Christie Crosby are my sure-
ties on several of the said promissory notes, and the aforesaid Franz Bern-
hard and Fritz Kothman are my sureties on one of my aforesaid prom-
issory notes, and the said Franz Bernhard and Christie Crosby are my
sureties on another one of my aforesaid promissory notes; and the afore-

said Martin Moran and Christie Crosby are my sureties on another of my promissory notes. Now, if I shall well and truly pay off and discharge my aforesaid indebtedness and keep harmless the said Wm. Geistweidt, C. Crosby, F. Bernhard, F. Kothman and Martin Moran, so that they or neither of them shall have to pay anything by reason of having become sureties for me, as aforesaid, then this conveyance is to be null and void; but should my aforesaid sureties or either of them sustain any damage or loss by reason of having become surety for me as aforesaid, then this obligation is to remain in full force and effect.

"Witness my hand, this 3d day of October, A. D. 1891.

"W. E. Wheeler."

### "EXHIBIT B.

"This is to witness that we, the undersigned, appoint William Geistweidt to deliver any and all cattle sold or to be sold to ................ and to be received by Felix Mann, of Menardville, Texas, same being the W. E. Wheeler cattle, to be delivered at Block House in the Wheeler Ranch in Mason County, Texas, on or about the 8th day of April, 1892. We also agree that Wm. Geistweidt shall receive all the checks and money paid or to be paid for said cattle; that he shall with the said money apply the same, first to the payment of the judgments rendered in District Court, Mason County, Texas, February, 1892, case No. 219, Wahrmand v. Wheeler et al.; case No. 220, Wahrmand v. Wheeler et al.; case No. 221, Wahrmand v. Wheeler et al.; case No. 222, Fischer v. Wheeler et al.; and case No. 225, Anna Martin & Son v. Wheeler et al.

"And with the remainder he shall pay off and satisfy all claims that we and each of us are surety for, for said W. E. Wheeler, and that are secured to us by mortgage from said Wheeler on the cattle to be so delivered to said Felix Mann, expenses of Geistweidt in delivering the cattle to be paid first as prior claim on this sale and delivery of the cattle.

Franz Bernhard.

H. F. Kothmann (per Bernhard).

Wm. Geistweidt.

C. Crosby.

Martin Moran."

This document is also endorsed on its back by Wheeler as follows:

"I accept the appointment of Wm. Geistweidt as representative of the mortgagees or heirs in this agreement on the reverse side signed, and agree that he may deliver said cattle and receive said monies, and pay said debts with the proceeds thereof.

"This, Mason, March 12, 1892.

"W. E. Wheeler."

*A. Chesley and Lewis Wood,* for appellant.—1. The court below erred in sustaining the demurrers of defendants Wm. Geistweidt, F. H. Kothman and Martin Moran to plaintiff's second amended petition and dis-

charging them with their costs of suit, for the reason that the allegations in said second amended petition set up a cause of action as against them, and entitled plaintiff to a hearing upon the facts alleged.

2. That a proper construction of the mortgage from Wheeler to Geistweidt and others, above mentioned, indicates that its primary object was to secure the payment of the notes therein mentioned. Sheldon on Subrogation, secs. 154, 155; Markel v. Eichelberger, 12 Md., 79; McMullen v. Neal, 60 Ala., 552; Richards v. Yoder, 10 Neb., 429; Eastman v. Foster, 8 Met., 19; Jones on Mort., sec. 1188; Butler v. Ladue, 12 Mich., 173.

3. Assuming that the execution of the mortgage was for the dual purpose of indemnifying the sureties and discharging the debts mentioned therein, then the creditors named became entitled in equity to the benefit of the security and acquired a vested interest therein. Vol. 1, part 1, White & Tudor's Leading Cases in Equity, p. 173; Maure v. Harrison, 1 Equity Cases Abr., 93; Wright v. Morley, 11 Vesey, 12, 22; Owens v. Miller, 29 Md., 144; Kirkman v. The Bank of North America, 2 Caldwell, 397; Moses v. Murgatroyd, 1 John. Chan., 119, 129; Phillips v. Thompson, 2 id., 418; Pratt v. Adams, 7 Paige, 617; Curtis v. Tyler, 9 id., 432; Ten Eyck v. Holmes, 3 Sandford, 428; Van Orden v. Durham, 35 Cal., 136; Roberts v. Colvin, 3 Grattan, 359; Toulmin v. Hamilton, 7 Ala., 362; Ohio Life Ins. Co. v. Ledyard, 8 id., 866; Paris v. Hulet, 26 Vermont, 308; Riddle v. Bowman, 7 Foster, 236; Haven v. Foley, 19 Mo., 632; Aldrich v. Martin, 4 R. I., 520; Crow v. Vance, 4 Clarke (Iowa), 434.

4. Where the principal has given security to his surety for his indemnity, and the debt becomes due and remains unpaid, and the surety becomes exposed to liability in consequence of the default of the principal, he has a right to require that the securities he holds shall be applied to the discharge of the obligation of his principal, and as he may exercise this right, so he must do so if required by the other parties to the obligation; and to avoid a circuity of action, a court of equity will authorize and even encourage the creditor to claim, through the medium of the surety, all the rights he has thus acquired, to be exercised for his benefit, and in discharge of the obligation. Vol. 1, pt. 1, White and Tudor's Leading Cases in Equity, 179; 2 Am. Lead. Cases, 5th ed., 412; Miller v. Lancaster, 5 Caldwell, 514, 522; Haven v. Foudry, 4 Met. (Ky.), 249; Hopewell v. Bank, 10 Leigh, 206.

5. Where the surety holds security merely for his indemnity and both himself and the principal become insolvent, the equity of the creditor to the assets in the hands of the surety becomes fixed, and this equity arises at the date of the insolvency of the surety, regardless of the date of filing the bill or whether the debt has become due. White and Tudor's Leading Cases in Equity, vol. 1, part 1, 178; Thrall v. Spencer, 16 Conn., 139; Sheldon on Subrogation, sec. 162, and authorities cited.

6. As against a general demurrer, the pleadings are to be liberally construed, and the allegation that Wheeler and Bernhard had been insolvent for more than six months prior to the filing of the suit (Oct. 22,

1892) was sufficient to authorize proof of their insolvency on March 28, 1892, when Wheeler executed the deed of trust to Butler, and on March 12, 1892, when Geistweidt was selected by his co-mortgagees with Wheeler's consent, to make a delivery of a portion of the cattle to Mann, and receive and apply the proceeds; and if such insolvency existed at the dates named the equitable rights of the creditors had become fixed, and neither Wheeler nor the mortgagees thereafter had authority to dispose of the proceeds of the cattle, except by pro rata payment among all the creditors named in the mortgage.  See authorities under No. 5 supra.   Also Prewitt v. Farris, 5 Texas, 370; Warner v. Bailey, 7 Texas, 517; City of Marshall v. Bailey, 27 Texas, 687.

7.   Under the facts alleged in the petition, Geistweidt, Kothman and Bernhard became jointly and severally liable to plaintiff for its pro rata share of the proceeds of the 2219 head of cattle turned over to them in May, 1892, by Butler for the benefit of the creditors mentioned in the mortgage.

8.   If Wheeler, Crosby and Bernhard were in a condition of insolvency on March 12, 1892, when Geistweidt accepted the agency to dispose of a portion of the cattle and apply the proceeds, then the stipulation in the agreement by which he received his appointment, that the judgment creditors should be first paid, was unauthorized, and the parties to such agreement became jointly and severally liable to plaintiff for its pro rata share of the fund so misappropriated.

9.   Some of the Federal Courts, also the courts of Missouri, Tennessee and Alabama, have held that equity will regard security given by a principal debtor to his surety, though merely for the surety's indemnity, as a trust created for the payment of the debt, and will see that it is applied to that purpose, by substituting, if necessary, the creditor to its benefits. See Sheldon on Subrogation, sec. 163; Burroughs v. U. S., 2 Paine C. C., 569; Branch v. Railway, 2 Woods C. C., 385; Thornton v. Exchange Bank, 71 Mo., 222; Breedlove v. Stump, 3 Yerg. (Tenn.), 257; Martin v. Bank, 31 Ala., 115.

*M. Fulton*, for appellees.—1.   The provision in the mortgage in question, exhibit "A" to plaintiff's petition, "That should my aforesaid sureties or either of them sustain any damage or loss by reason of having become surety for me as aforesaid, then this obligation is to remain in full force and effect;" makes the instrument one to indemnify such sureties against loss and damage, and not a mortgage securing the debt, and not an indemnity against liability.   That the construction of mortgage as regards subject matter, is with the court, and special words and direction control general directions of scope and intent of mortgage: Jones on Chattel Mort., sec. 77 and 78; Soell v. Hadden, 85 Texas, 187; Jones on Mort., vol. 1, sec. 101; Broom's Legal Maxims, 8 ed., pages 650 and 651.   As to what an indemnity is in connection with the mortgage under discussion: Gage v. Lewis, 68 Ill., 604; Weller v. Eames, 15 Minn., 461; Valentine v. Wheeler, 122 Mass., 566; Hoy v. Hansborough, 1

Freem. Ch. (Miss.), 533. On the distinction between the two clauses in the mortgage, the one indemnifying against liability, the other indemnifying against loss and damage: Gilbert v. Wiman, 1 N. Y., 550; Crippen v. Thompson, 6 Barb., 532; Belloui v. Freeborn, 63 N. Y., 383; Churchill v. Hunt, 3 Denio, 321; Buckfeller v. Donnelley, 8 Conn., 623; Wright v. Whiting, 40 Barb., 235; Jarvis v. Sewell, 40 Barb., 449; Port v. Jackson, 17 Johns., 239; Aberdeen v. Blackmar, 6 Hill, 324; Lee v. Clark, 1 Hill, 56; Halsey v. Reed, 9 Paige, 451. No action could be brought under the mortgage to foreclose or otherwise, until after the actual damage sustained by the sureties: Taliferro v. Brown, 11 Ala., 702; Israel v. Reynolds, 11 Ill., 218; Loyd v. Marvin, 7 Blackf. (Ind.), 464; Gennings v. Norton, 35 Ind., 308; Valentine v. Wheeler, 122 Mass., 566; Thompson v. Taylor, 30 Wis., 68; Carson Opera House v. Miller, 16 Nev., 327; Jeffers v. Johnson, 21 N. J. L., 73; Gilbert v. Wiman, 1 N. Y., 550; Pond v. Warner, 2 Vt., 532.

2. Where a creditor seeks to appropriate to his debt the collateral indemnity of the surety, it must appear that the security is for the debt, as well as for the ultimate protection of the surety; and that if the security given is for indemnification of the surety against loss or damage, or is for his personal indemnity against loss, the creditor can not appropriate the security so held by such surety, to the satisfaction of the debt; such creditor is not subrogated to the rights of the surety.

3. A trustee in the possession of the trust estate can not create a trust on his trust. Butler, the trustee for Wheeler, had no such interest in the property as authorized or empowered him to transfer the property for the use of appellant. Moody & Jemison v. Paschal, 60 Texas, 485; Hunnewell v. Lane, 11 Met., 163; Perry on Trusts, sec. 402, vol. 1, numerous cases cited; Campbell Printing Co. v. Powell, 78 Texas, 53; Pool v. Doster, 59 Miss., 258; Bush v. Stamps, 26 Miss., 463; McLean v. Ragsdale, 31 Miss., 701; Osborn v. Noble, 46 Miss., 449; Bibb v. Martin, 14 S. & M., 87; Hunter v. Richardson, 1 Duvall, 247; Pratt v. Adams, 7 Paige, 615; Daniel v. Joyner, 3 Iredell, 513; Hopewell v. Bank, 10 Leigh, 206; Finney v. Finney, 4 Harris, 380; see the subject fully and learnedly discussed in White & Tudor's Leading Cases in Equity, vol. 1, part 1, pages 174 to 179 inclusive; Spalding v. Henshaw, 80 Ky., 55.

4. If appellees assumed as intermeddlers to act as trustees under Butler, and did dispose of the cattle as charged, they could only be held liable for the proceeds of sale of the cattle to the persons entitled thereto in and by the terms of the deed of trust from Wheeler to Butler; and the appellants must show themselves entitled to this money in and by this deed of trust.

FISHER, Chief Justice.—This is a suit filed October 22, 1892, in the District Court of Lampasas County, by the First National Bank of Bellville, located at Bellville, Texas, against defendants, W. E. Wheeler, F. Bernhard, Wm. Geisweidt, F. Kothman and Martin Moran, all residents of Mason County, Texas. The suit is upon a promissory note

for $5000, executed May 19, 1891, by defendants W. E. Wheeler, F. Bernhard, together with one C. Crosby, in favor of the First National Bank of Bellville, due 60 days, with interest from maturity. The note is joint and several in form, but in fact Wheeler was the principal beneficiary in the note, and Bernhard and Crosby were sureties. Crosby died insolvent, before the trial, and the case was dismissed as to him.

In the year 1891 Wheeler was heavily in debt, owing numerous parties in large amounts, to whom he had executed promissory notes. There were ten of these notes, including the note due plaintiff and here sued upon, amounting to $22,300, upon which defendants, Bernhard, Geistweidt, Kothman, Moran and said Crosby, were sureties; that is, some two of them were sureties upon each note.

On October 8, 1891, Wheeler, as the petition alleges, in order to secure the payment of these notes, including plaintiff's, and thereby protect his sureties, executed to them (the sureties) a mortgage upon 5000 head of cattle.

Wheeler, Crosby and Bernhard thereafter became insolvent; the cattle were turned over to the sureties and sold by them; and this suit, so far as ... ...nts Geistweidt, Kothman and Moran are concerned, is to su... ... proceeds of the cattle, alleged to be in their hands, to the p... ... the debts secured by the mortgage, and to recover from th... plaintiff's pro rata share of such proceeds.

... case was tried on November 26, 1894, and the court sustained a demurrer to the petition in so far as it sought a recovery against defendants Geistweidt, Kothman and Moran, and gave plaintiff judgment against defendants Wheeler and Bernhard, for the amount of the note; from which judgment of the court sustaining the demurrer, plaintiff gave notice of appeal, has assigned error and brings the case to this court.

The petition, after averring the liability of Wheeler as principal on the note sued on, and that Bernhard and Crosby were sureties, and that all are insolvent, and that Crosby is dead, alleges that:

"During the year 1891 and before that time, defendant Wheeler was to a large extent financially involved, owing numerous parties in large amounts, to whom he had executed promissory notes with personal security. That on, to wit, October 8, 1891, among other liabilities, he was indebted by promissory notes upon which defendant Wm. Geistweidt and said C. Crosby were sureties, to the following parties, and in the following amounts, to wit:

| | |
|---|---:|
| Emil Wahrmand | $3050 |
| August Wahrmand | 350 |
| Adolph Wahrmand | 400 |
| Lou is Fischer | 300 |
| Paul Harnisch | 900 |
| T. D. Smith | 2800 |
| Total | $7800 |

To T. D. Smith, with defendants Crosby and Kothman, sureties.. 4000
To Ann Martin & Sons, with defendants Crosby and Moran, sureties 1500
To F. Landon, with defendants Bernhard and Kothman, sureties.. 4000
  To plaintiff, with defendants Bernhard and Crosby, sureties.... 5000

Making a total of, to wit...............................$22300

Plaintiff further says that on, to wit, said 8th day of October, 1891, defendant Wheeler, for the purpose of securing the payment of his aforesaid promissory notes, including plaintiff's, and thereby protect his aforesaid sureties from harm by reason of their respective liabilities on the notes above mentioned, all of which sureties (except C. Crosby, now dead) are defendants in this suit, executed and delivered to them (said sureties) a mortgage upon, to wit, five thousand head of cattle, which mortgage was duly accepted by the mortgagees and properly authenticated and promptly recorded in the proper counties; a copy of which is hereto attached, marked exhibit A, and is made a part of this petition.

Plaintiff further says that thereafter, to wit, to the February term, 1892, of the District Court of Mason County, Texas, suit was brought upon the aforesaid notes described as payable to Emil Wahrmand, August Wahrmand, Adolph Wahrmand (sued upon in the name of Eliza Wahrmand) Louis Fischer and Mrs. Ann Martin & Sons, upon which judgments were obtained on, to wit, March 2, 1892, in favor of each of the plaintiffs for the amount of their respective demands.

Plaintiff further says that thereafter, to wit, March 12, 1892, defendants Bernhard, Kothman, Geistweidt, Moran and said Crosby, in order to carry out a contract of sale of 2300 head of said cattle which had previously been made by said Wheeler, for the sum of, to wit, $16,000, delivery to be made on or about April 8, 1892, to one Felix Mann as agent of the purchaser, entered into a written agreement, with the approval of defendant Wheeler, by which they selected defendant Geistweidt from their number to act as agent for the parties interested in the proceeds of the cattle, to collect and deliver said cattle to Mann and receive the checks and money therefor, which was payable on delivery, and apply it to the payment of the aforesaid claims of the above named creditors of Wheeler, which were mentioned in and secured by said mortgage, a copy of which agreement is hereto attached and made a part hereof, marked "Exhibit B."

Plaintiff further says that defendant Geistweidt delivered 508 head of said cattle to Mann in accordance with the contract and in pursuance of his agency as above stated, which 508 head so sold amounted to the sum of, to wit, $3783, out of which he is entitled to a credit as follows:

Taxes on the cattle for 1891......................$147.90
Paid Grote expenses taking care of cattle......... 72.70
Expenses of gathering........................... 139.30     359.90

Thus leaving a balance of.....................          $3378.10

arising from the sale of said 508 head of cattle, to be applied by him towards the pro rata payment of the debts secured by said mortgage. Plaintiff further says, that shortly after the appointment of defendant Geistweidt as agent as aforesaid, to wit, March 19, 1892, defendant Crosby, being insolvent, disposed of all of his property subject to execution, by deed of trust for the benefit of his creditors, giving preference to those who were his individual creditors, and thereafter, to wit, March 28, 1892, defendant Wheeler executed a conveyance of all his property, real and personal, except such as was exempt from forced sale, to one J. C. Butler as trustee, or assignee, for the benefit of his creditors, which trust said Butler accepted, and thereafter, to wit, the ———— day of May, 1892, said Butler turned over said cattle, or what was left of them, as they run, to defendants Geistweidt, Kothman and Bernhard for the purpose of being sold by them and the proceeds applied to the payment of the several creditors whose claims were secured by the mortgage in accordance with their respective rights thereunder.

Plaintiff further says that prior to the turning over of said cattle by Butler to defendants Geistweidt, Kothman and Bernhard, said Crosby, on account of his insolvency and transfer of his property for the benefit of his creditors, declined to have anything to do with said cattle, but left the cattle and the debts secured thereby to his co-sureties to manage as best they could, and defendant Moran, prior to the turning over said cattle by Butler as aforesaid, having ceased to be interested in them by reason of the debt upon which he was surety that was secured by the mortgage, to wit, the Anna Martin & Sons note for $1500, having been paid off in full, also took no further interest in the cattle, and hence all the cattle were turned over by Butler to defendants Geistweidt, Kothman and Bernhard, as above stated.

Plaintiff further says that thereafter, to wit, in the month of November, 1892, defendants Geistweidt, Kothman and Bernhard sold the entire remnant of said cattle, which upon being gathered was found to be, to wit, 2219 head, to one R. R. Russell at $6 per head, amounting to the sum of $13,314, which amount was received by them.

Plaintiff further says that by reason of the facts above stated, defendant Geistweidt, as it is advised, believes and so charges, became individually liable to plaintiff for its pro rata share, along with the other creditors secured by the mortgage, of the net proceeds of said 508 head of cattle delivered by him to Felix Mann, to wit, the sum of $3378.10, and also that defendants Geistweidt, Kothman and Bernhard, as agents for the creditors named in the mortgage, are jointly and severally liable to plaintiff for its pro rata share of the proceeds of the 2219 head of cattle turned over to them by Butler for the benefit of said creditors and sold by them to R. R. Russell, as above set forth, amounting to the sum of $13,314.

Plaintiff further says that it is informed, believes and so charges the fact to be, that defendant Geistweidt, by virtue of his respective agencies above mentioned, has received much the larger share of all the

moneys arising from the sales of said cattle, and has to a large extent misapplied the same, to wit, to the extent of $4000."

The petition concludes with a prayer for an accounting of the proceeds of the property that went into the hands of Bernhard, Kothman, Moran and Geistweidt, and that said parties be retained in the case for that purpose, and that plaintiff recover such interest in said proceeds as it may be entitled to, or judgment against the parties that appropriated such property for the pro rata interest of plaintiff.

We have met with some difficulty in determining the legal effect of the instrument executed October 8, 1891, by Wheeler for the protection of his sureties. The difficulty was whether it should be held a security for their benefit for the purpose of securing the debts, or simply a naked contract of indemnity for their benefit only in the event they sustained damages or loss by reason of the suretyship. But viewed in the light of the facts stated that the principal and sureties of the notes sued on are insolvent, coupled with the fact that a part of the property encumbered by this instrument was actually delivered to the sureties for the purpose of applying it to the debts for which the sureties were bound, we are disposed to treat the contract of indemnity to this extent as of the nature of a security of the debt which the creditor may be subrogated to. When the principal debtor, as is the case here, executes and delivers to his sureties a mortgage indemnifying them against loss, and accompanies such instrument with a delivery and possession of property to secure it, it would be inequitable, upon the insolvency of the principal and sureties, to construe the contract one of personal indemnity to the sole benefit of the sureties and relieve them from liability to account for the property they have received from the principal. Sheldon, Subrogation, secs. 159-163; Owens v. Miller, 29 Md., 161; Moses v. Murgetroyd, 1 Johns., Ch. 129; Pratt v. Adams, 7 Paige, 617.

If the instrument was in terms a mortgage for the purpose of securing the surety or the debt, in the light of all the authorities upon the subject, it would be held that the creditor's right of subrogation unquestionably exists, and that in such a case the creditor would have the right to enforce the mortgage for his benefit, thus by subrogation working out the right of the surety. Assuming that in this case the instrument which the creditor here is seeking to be subrogated to is not of the class just named, but is technically a contract of indemnity to the surety against loss, would not the surety who has in his possession under that instrument the property therein described, upon the insolvency of his principal and when his liability for the debt had become fixed, be authorized to apply the property so delivered to him by the principal debtor to the payment and satisfaction of the debt? Van Orden v. Durham, 35 Cal., 145. If such a right be conceded, and as to its existence there ought to be no question, why would not the creditor, upon the refusal of the surety to so apply the property, be subrogated to the rights of such a surety, especially if he is insolvent. Equity confers upon the creditor just such rights to the indemnity as exists in the surety, and if the surety

is permitted to enforce the indemnity and apply the property, the same rights are conferred upon the creditor.

A contract indemnifying the surety only against loss may in law be construed as a naked indemnity, and that no right exists to foreclose unless the surety has actually sustained a loss, but when, in addition to this, the incumbered property is actually delivered to the surety by the debtors, and he holds it and retains it for the purpose of his security, or to be applied to the debt, then the transaction should be treated as the parties have treated it and in equity held to be a security. If a personal indemnity is accompanied with a delivery of property to be applied to the debt, it is treated as a pledge or trust which the creditor may follow. 2 Brandt, Suretyship, sec. 328.

The averments are to the effect that defendant Geistweidt was made the agent of Bernhard and other sureties of Wheeler to deliver to one Mann certain cattle, and to receive the proceeds, which were to be applied to the payment of the debts mentioned in the contract of indemnity. The effect of this was to place in Bernhard's hands, with the others named, the property as pledged, which was to accompany the indemnity personally executed by Wheeler and which was to be applied to the debts there stated, of which this plaintiff's claim is one. The remedy exists in Bernhard, if he was so disposed to pursue it, to require Geistweidt to account to him for the pro rata share of the amount received by him in the sale of the cattle, and which he received as Bernhard's agent, to the end that Bernhard may apply it to the debt for which he is liable and which is mentioned in the contract of indemnity executed to him and the other sureties. The plaintiff has become subrogated to Bernhard's rights in this matter, and it will be permitted to hold the defendants liable to the same extent as would be granted to Bernhard if he had pursued his remedy looking to this end.

There is another aspect of the case which requires us to hold that the court erred in sustaining the demurrers. Those allegations of the petition which charge that the principal debtor, Wheeler, executed to one Butler a deed of trust upon his property to secure his creditors, and that such property was turned over and delivered to defendants Geistweidt, Kothman and Bernhard for the purpose of being applied to the payment of the claims of the several creditors, create against the defendants named a liability to the creditors secured and that accepted the benefits of the trust. The trustee, Butler, may not have had the power to substitute some one in his place to execute the trust, but when he diverted the property by placing it in the hands of others who knew that it was charged with the trust, he and those that received it became liable to the beneficiaries for its value not to exceed the amount of their claims. 2 Pomeroy's Equity, secs. 994-996, 1048, 1049, 1051, 920 (page 1309), 1080; Martin v. Bank, 31 Ala., 121; Sheldon on Subrogation, secs. 163, 166, 167.

This action by the plaintiff is equivalent to an acceptance of the benefits of the trust. We decide the case solely as presented by the peti-

tion, and we do not wish to be understood as holding that the rules of law as stated shall govern the final disposition of the case, for the facts. may not entitle the plaintiff to any relief.

Judgment reversed and cause remanded.

*Reversed and remanded.*

Delivered February 12, 1896.