In re MARSH et al.

(District Court, D. Connecticut. June 4, 1902.)

No. 567.

1. BANKRUPTCY—TRUST FUNDS IN HANDS OF BANKRUPT—RIGHT TO RECOVER FROM TRUSTEE.

One claiming the right to recover a sum from a trustee in bankruptcy on the ground that it was a trust fund held by the bankrupt has the burden of proving that such fund in some form was a part of the bankrupt's estate when it passed into the hands of the trustee, and he does not sustain that burden by proving merely that the money came into the hands of the bankrupt at various times during the three years prior to the bankruptcy, there being no evidence showing what disposition was made of it by the bankrupt.

In Bankruptcy. On question certified from referee.

The following memorandum contains the opinion and ruling of John W. Banks, referee:

Petitioners invoke the equitable doctrine of the right of the owner of a trust fund to follow it and recover it from any one, except a bona fide purchaser for value, into whose possession it can be traced. They claim that various sums of money, aggregating over $7,000, which in equity belonged to them, came into the possession of Charles B. and Edward H. Marsh during the years 1898, 1899, and 1900, and that, Marsh Bros. having subsequently been adjudged bankrupts, they are entitled to recover this sum from the trustee in bankruptcy out of the first moneys coming into his hands. I understand petitioners' claim to be that it is not necessary for them to so trace it, but that it is sufficient for them to show that their money came into the hands of the bankrupts prior to the filing of the petition in bankruptcy, the presumption being that the present assets of the estate are thereby greater than they would otherwise have been. I do not think that this is so either upon principle or authority. Claimants have no standing unless they can show that the trustee has got their property. They have no claim entitled to priority over general creditors under the provision of the bankruptcy act. But they come into court and say that the property in the possession of the trustee in bankruptcy belongs to them and is no part of the bankrupt estate. They assume the burden of proving that fact, but do not sustain that burden by proving merely that moneys of theirs were in the hands of bankrupts at some time prior to the bankruptcy. Marsh Bros. may have expended these sums in personal living expenses, lost them in speculation, or used them in any one of a hundred different ways, so that no equivalent therefor had become a part of their estate at the time of the adjudication in bankruptcy. And this is the more probable in a case like the present, where it appears that the greater portion of the money came into Marsh Bros.' possession two or more years prior to bankruptcy proceedings. It would seem upon principle, therefore, that in such a case as this claimants must at least trace the fund in some shape into the estate of the bankrupts which came into the hands of the trustee in bankruptcy. The great weight of authority, also, as it seems to me, is to the same effect. Most of the cases cited upon claimants' brief sustain the contention of the trustee that recovery can be had only when the fund can be traced into the estate coming into the hands of the trustee. Wasson v. Hawkins (C. C.) 59 Fed. 233, was a case where money was deposited in a bank, which was known by its officers to be insolvent, a few minutes before closing hour on the last day on which it did business, and it was held that the depositor could recover it from the receiver, who "retained the specific money among the general mass of the bank's funds." In the course of opinion the court said: "The mere fact that the plaintiff becomes a creditor of the insolvent bank through the fraud of its president, and

that the bank became a trustee ex maleficio, would give him no right to preference over other creditors, unless he can trace and identify his money as a part of the common mass." In Massey v. Fisher (C. C.) 62 Fed. 958, the headnote is as follows: "The fact that the money was not marked, and, by mingling with the other funds of the bank, lost its identity, does not affect the right to recovery in full, if it can be traced to the vaults of the bank, and it appears that a sum equivalent to it remained continuously therein until removed by the receiver." In Cavin v. Gleason, 105 N. Y. 256, 11 N. E. 504, White, a private banker, had in his possession a trust fund of petitioners. He used all of it except $30 in paying his personal debts, and then made an assignment, the $30 coming into the hands of the assignee. Held, that petitioners were entitled to recover only the $30. To entitle the petitioners to recover, the court said it must at least be made to appear that the fund or property of the insolvent remaining for distribution included the proceeds of the trust estate, and distinguished the case of People v. City Bank of Rochester, 96 N. Y. 32, where it was not claimed that the proceeds of the checks had not passed in some form to the receiver. The only cases cited by claimants which seem to fully sustain their contention are those of Peak v. Ellicott, 30 Kan. 499, 46 Am. Rep. 90; Ellicott v. Barnes, 31 Kan. 171, 1 Pac. 767; McLeod v. Evans, 66 Wis. 401, 28 N. W. 173, 214, 57 Am. Rep. 287; Carley v. Graves, 85 Mich. 483, 48 N. W. 710, 24 Am. St. Rep. 99. In Peak v. Ellicott a sum of money was delivered to the cashier of a national bank, with which to pay plaintiff's note. The money was mingled with funds of the bank, which failed within a month. Held, that plaintiff was entitled to recover. Ellicott v. Barnes was a similar case, arising out of the same transaction. These cases have since been practically overruled by the cases of Insurance Co. v. Caldwell, 59 Kan. 156, 52 Pac. 440, and Kansas State Bank v. First State Bank (Kan. Sup. 1901) 64 Pac. 634. In Insurance Co. v. Caldwell, the court said: "The fund itself, or something into which it has gone and which stands as its representative, must be on hand, subject to identification, and separable from the general assets, in order to charge the assignee with the trust; or, if the fund has been so commingled with the general assets as to be incapable of identification or tracing, the estate which came to the assignee must have been augmented or bettered in an appreciable and tangible way in order to charge it with the trust. The mere saving of the estate by the discharge of general indebtedness, otherwise payable out of it, or by the payment of the current expenses of the business, is not the augmentation or betterment of the estate, within the meaning of the rule." This was quoted with approval in Kansas State Bank v. First State Bank, in which case the court said that in Peak v. Ellicott the matter of identifying and tracing the trust fund received but little attention. McLeod v. Evans, supra, was a case of a deposit with a banker of a draft for collection. He collected it, and failed shortly afterward. The proceeds of the draft were not distinctly traced into the assets which came into the hands of his assignee. The court held that plaintiff could recover, on the ground that the proceeds of the draft had been used by him either to pay off his debts or increase his assets, and in either case it went to the benefit of his estate. This case was criticised in Little v. Chadwick, 151 Mass. 109, 23 N. E. 1005, 7 L. R. A. 570, and Slater v. Oriental Mills, 18 R. I. 352, 27 Atl. 443, both holding that the right to follow and appropriate the trust fund failed when it could not be traced into the estate remaining; and has since been squarely overruled in the case of Silk Co. v. Flanders, 87 Wis. 237, 58 N. W. 383, where it was held, on a similar state of facts, that no recovery could be had unless the fund could be traced into the hands of the assignee. In Carley v. Graves, 85 Mich. 483, 48 N. W. 710, 24 Am. St. Rep. 99, the court adopted the rule of McLeod v. Evans, that it was sufficient if the proceeds of the trust fund were used by the insolvent to pay off its debts or increase its assets. It seems to me that this case is contrary to the decided weight of authority. It is true that in a few cases, such as San Diego Co. v. California Nat. Bank (C. C.) 52 Fed. 59, and Harrison v. Smith, 83 Mo. 210, 53 Am. Rep. 571, restitution has been decreed though the trust property was not clearly traced into the fund upon which the lien was impressed, and in

other cases the courts have, upon very slight evidence, found that the proceeds of the trust still existed in some form in the bankrupt estate. These cases seem to justify the comment of Phillips, J., in Metropolitan Nat. Bank v. Campbell Commission Co. (C. C.) 77 Fed. 705, that "while some courts, in the eager desire for justice, have carried this rule quite far, in cases strongly appealing for judgment of restitution, as in cases of perversion of school funds and of guardians and the like, there is often great danger of forgetting that there is virtue and truth in the maxim that "hard cases are the quicksands of the law." In Central Nat. Bank v. Connecticut Mut. Life Ins. Co., 104 U. S. 55, 26 L. Ed. 693, the United States supreme court quotes with approval the leading English case of Knatchbull v. Hallett (In re Hallett's Estate) 13 Ch. Div. 696, in which the master of the rolls states the "modern doctrine of equity" to be that the beneficial owner of trust funds is entitled to their proceeds, provided only he can identify them, and if, by reason of the mingling of the trust money with that of the trustee, the means of identification fails, the cestui que trust is entitled to a charge upon the net investment, "to the extent of the trust money traceable into it." This rule modifies the old dictum of Lord Ellenborough, that the fund could not be followed when it had been turned into money and confounded in a general mass of the same description, since "money has no earmarks." The modern doctrine of equity, then, as I understand it, is that when trust funds are indistinguishably mingled by the trustee with other moneys, and the mingled funds, or part of them, come into the hands of the assignee, the court will presume, in the absence of evidence to the contrary, that the trust fund is contained in the mingled mass, and grant restitution; but if the trust funds were used by the trustee in payment of his debts, or otherwise squandered, and did not come into the hands of the assignee, the owner will rot be entitled to payment, either out of any cash which may have come into the hands of the assignee, or out of other assets in his hands in preference to other creditors, and the burden of proof is on the owner of the trust fund to trace his property into the estate in the hands of the assignee. Beach, Trusts, 1629, 1631. This burden the claimants in the case at the bar have failed to sustain, and the petition should therefore be denied.

I have assumed, for the sake of the argument, that claimants have established that they suffered a loss of some $7,000 through the appropriation by Marsh Bros. of certain securities. It appears as a fact that they still hold the notes deposited as collateral security for the $8,000 note, and the amount of their loss, if any, is not fixed by the evidence presented. I have not, however, deemed it necessary to consider that question or others raised upon the brief for the trustee, for the reason that, in my view of the law, claimants would not be entitled to recover, even if all these questions were resolved in their favor. An order may be drawn denying each of the petitions.

Canfield & Judson, for trustee.
J. C. Chamberlain, for petitioners.

PLATT, District Judge. I have carefully examined the certificate of John W. Banks, referee, in the above case. After setting forth in its earlier paragraphs a history of the business dealings in accordance with which the bankrupts had borrowed large sums of money from the petitioners, and, to secure their notes given·therefor, had assigned to the petitioners a large number of mortgages as collaterals, and had from time to time taken up certain collaterals and substituted other collaterals instead, sometimes with permission of the petitioners and sometimes without such permission, the referee goes on, in paragraph 20 et seq., as follows:

"The petitioners caused all of said assignments to be recorded in the land records of Bridgeport on the 26th day of December, 1900, and were

prompted to record the same because it came to their knowledge that said Marsh Bros. were in embarrassed circumstances.

"The estate of the said bankrupts that went into the possession of the trustee consisted of miscellaneous items of personal property and numerous equities in real estate in said Bridgeport. Said trustee derived from sales of equities of redemption the sum of $303, and the interest of said bankrupts in the equities still undisposed is of inconsiderable, if any, value. Said trustee had derived from all of the personal estate of the said bankrupts the sum of $5,447.16. The claims against said estate as proved amount to $32,-830.92, of which $2,583.09 are for wages due employés of the bankrupts, and of which last-mentioned sum about $2,583.09 are preferred claims.

"No evidence was offered to show that the estate in the hands of said trustee had been enhanced in value by said sums previously realized by said Marsh Bros., or C. B. Marsh, from the releases of said mortgages or sales of said properties in respect to which said wrongful appropriations are claimed to arise, nor what disposition was made of said sums realized from said mortgages or sales, and no connection was traced or shown between said sums so realized and the ownership of the property that passed into the possession of said trustee.

"I find that the petitioners had knowledge that said Marsh Bros. were withdrawing and releasing mortgages held by them as collateral security as aforesaid, and that said assignments were not recorded to facilitate this mode of doing business, and that the wrong committed by Marsh Bros. consisted only in the releases in question having been made without substituting other mortgages in their place, as it was understood by the parties from their uniform course of dealing would be done.

"The petitioners claimed that the burden of proof lay upon the trustee in bankruptcy to show that the bankrupt estate in his hands was not enhanced by the sums of money which came into the possession of Marsh Bros., as the proceeds of the sale of these properties, and claimed to have proven that the estate in the hands of the trustee was increased by that amount.

"The court overruled the claim of petitioners, but held and ruled that the burden of proof was upon the petitioners to trace the proceeds into the estate coming into the hands of the trustee, and that this they had failed to do; and the said question is certified to the judge for his opinion thereon."

In stating my opinion upon the point of law at issue it would be an unnecessary task to attempt any improvement upon the comprehensive, closely reasoned and logical analysis contained in the memorandum filed by the referee December 18, 1901. The matter has been argued before me exhaustively and ably by counsel. I have given thorough attention to all the points which they have presented, have examined the cases to which they refer me, and have noticed the care with which the referee has discussed them. I fully agree with him, and offer herewith his memorandum as containing a very complete statement of the opinion at which I have arrived from my own investigation, and many of the reasons which have led me to my conclusions. The exceptions to the report of the referee as to matters contained in paragraphs 5 and 23 are overruled.

My reason for this ruling is twofold: (1) In the decision of questions of controverted fact I must depend upon the conclusions arrived at by the referee. He has every opportunity for arriving at the truth. (2) In this particular case I have been at great pains to examine the testimony which was taken down at the time of hearing and has been forwarded to me, and I am bound to say that I concur most heartily with the referee in his conclusions.

The decision of the referee is sustained.