### DOLLAR v. LOCKNEY SUPPLY CO. et al.

(Court of Civil Appeals of Texas. Amarillo. March 14, 1914.)

1. ACTION (§ 50*)—JOINDER—MULTIFARIOUSNESS.

The petition alleged that defendant corporation was conducting a mercantile business, and that the individual defendants were stockholders and directors, except one who became trustee for the benefit of the corporate creditors, and that the directors knew or should have known, by the use of ordinary care, all of the matters alleged herein; that the directors *held* out to the public that the corporation was of undoubted financial ability, with assets valued at $25,000, when it did not have that sum and was practically in a failing condition; that it received cotton from plaintiff for shipment with the understanding that when it was sold, if there was any money in excess of the sum then advanced to plaintiff remaining from the proceeds of the cotton, it would pay such sum to plaintiff, and that plaintiff would make up any loss to the corporation, and that the corporation shipped the cotton to commission merchants and embezzled the proceeds from its sale over and above the amount advanced to plaintiff and used such proceeds in its business, so that the particular sum due plaintiff thereafter could not be identified; that the directors knew of the misappropriations of such sums or were charged with knowledge thereof; and that the trustee for the creditors did not take title to the assets as against plaintiff's demand,

and has in his possession sufficient funds to satisfy plaintiff's claim. *Held*, that the petition was not subject to exception for multifariousness; the cause of action alleged being the misapplication of funds belonging to plaintiff to increase the assets of the corporation.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 511–547; Dec. Dig. § 50.*]

2. EQUITY (§ 51*)—JOINDER.

A multiplicity of suits is not favored.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 167–171; Dec. Dig. § 51.*]

3. EQUITY (§ 147*)—PLEADING—"MULTIFARIOUSNESS."

"Multifariousness" is the improper joining in one bill of distinct and independent matters, as the union of several distinct and unconnected matters against one defendant, or a demand with respect to several distinct matters against several defendants.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 340; Dec. Dig. § 147.*

For other definitions, see Words and Phrases, vol. 5, pp. 4616–4618.]

4. CORPORATIONS (§ 306*)—LIABILITY OF DIRECTORS.

Anomalous to the rule that corporate directors are personally liable for false representations made by them while acting for the corporation, whether they know of their falsity or not, directors are liable for the misapplication of funds held in trust by the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1457, 1458; Dec. Dig. § 306.*]

5. CORPORATIONS (§ 306*)—LIABILITY OF DIRECTORS.

Corporate directors or trustees, who commingle money collected for another with the corporate funds, contrary to the instructions of the owner, or knowingly permit their employés to do so, resulting in the loss of such funds, are personally liable therefor.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1457, 1458; Dec. Dig. § 306.*]

6. CORPORATIONS (§ 325*)—DIRECTORS—RELATION TO THIRD PERSONS.

While, as to the stockholders of a corporation, directors are trustees, as to corporate creditors or third persons they are agents of the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1442, 1457, 1458; Dec. Dig. § 325.*]

7. CORPORATIONS (§ 343*)—LIABILITY OF DIRECTORS—PERSONAL LIABILITY.

Corporate directors, who knowingly appropriated to the use of the corporation the proceeds of cotton held by the corporation and belonging to another, or knowingly permitted the corporation to do so, are jointly and severally liable with the corporation therefor.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 343.*]

8. TRUSTS (§ 356*)—PREFERENCE.

In order to recover against a trustee of a corporation for the benefit of creditors for funds belonging to plaintiff and wrongfully appropriated by the corporate officers or assert an equitable lien thereon so as to obtain a preference over other creditors, the proceeds must be traced into the hands of the corporation and conveyed to the trustee.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 529–538; Dec. Dig. § 356.*]

Appeal from District Court, Floyd County; R. C. Joiner, Special Judge.

Suit by J. F. Dollar against the Lockney

---

*For other cases see same topic \ \ section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Supply Company and others. From a judgment for plaintiff against the defendant named only, plaintiff appeals. Reversed in part, and affirmed in part.

A. P. McKinnon, of Floydada, for appellant. Turner & Wharton, of Amarillo, Chas. H. Veale, of Floydada, E. T. Miller and R. E. Underwood, both of Amarillo, and Mathis & Williams, of Plainview, for appellee.

HUFF, C. J. This suit was instituted by appellant, J. F. Dollar, against the Lockney Supply Company, C. R. McCollum, H. Z. Pennington, A. R. Merriwether, R. E. Hadley, O. R. McCollum, and R. I. Wallingford. In his petition appellant alleges the Lockney Supply Company was duly incorporated as a private corporation, under the laws of Texas, on the 26th day of March, A. D. 1912, the purpose of said corporation being to conduct a general mercantile business in buying and selling goods, wares, and merchandise of all descriptions, with a capital stock of $25,000; that all of the named appellees were stockholders and directors in the corporation, except the appellee R. I. Wallingford; that the corporation opened up a large stock of merchandise at Lockney, in Floyd county, and that on the 12th day of February, 1913, the corporation executed its deed of trust to R. I. Wallingford, trustee, for the benefit of its creditors, conveying all its personal property, real estate, chose in action, etc.; that the said directors were actively directing and controlling the affairs of said corporation and well knew, and ought to have known, and with the use of ordinary care and of such as it was their duty to have exercised might have known, all and singular the particulars and conditions of said corporation in respect to the matters set out in the petition; that the directors held out to the public that the corporation was of undoubted financial ability and deserving public confidence, advertising in various ways the value and character of its business, which was estimated at the value of $25,000. In fact, while the corporation purported to have a capital stock of $25,000 and its reputation of solvency, it did not have that sum, and long before the transactions mentioned it owed more money than the value of its assets and was to all intents and purposes in an insolvent and failing condition. It is alleged that the corporation, through its acting manager, A. W. Tanner, received from appellant seven bales of cotton October 8, 1912, for shipment on account of appellant with the understanding and agreement that the appellant would draw on said cotton the sum of $350, which he did, and it was further agreed that when said cotton was sold, if there was any money in excess of said sum from the proceeds of said cotton, it would pay the sum to appellant, and, if there was any loss when the cotton was sold, the appellant would make the loss to the company, meaning thereby that if said cotton sold for a less amount than the sum of money advanced to him, together with the commissions and costs of handling the same, appellant should pay the difference to the Lockney Supply Company. Under a like agreement the appellant, on December 25, 1912, delivered to the company nine bales of cotton, and on that day the company received from J. F. Gilly two bales; November 7, 1912, it received from C. E. Wells two bales, December 13, 1912, one bale, and October 16, 1912, eight bales. On November 8, 1912, R. C. Covington delivered one bale, and on October 10, 1912, S. J. Verden delivered three bales; on October 10, 1912, W. H. Pope delivered five bales. J. W. Underwood delivered to the company during the fall of 1912, and up to February 12, 1913, eleven bales. The parties delivering cotton to the company, other than appellant, are alleged to have assigned to appellant their claim for the money due them by the company. The appellant sets out the number on the respective bales, the weight, the amount advanced, and the amount for which they sold. It is alleged in the petition that the Lockney Supply Company shipped all of said cotton to W. D. Cleveland & Son, commission merchants, at Houston, Tex., which said firm sold, and the proceeds of which they accounted for to the Lockney Supply Company. That, after deducting all charges and money advanced on the cotton, there was a difference due on all the cotton, which was itemized in the pleadings separately, aggregating the sum of $942.28. It is alleged the proceeds from the sale of the cotton were received by the supply company before the deed of trust was executed, and that demand for the amount due had been made of the company both before and after the deed of trust, and also from the trustee, R. I. Wallingford. It is alleged that the relation of debtor and creditor did not exist between appellant and his assignors and the supply company, but in receiving said cotton for shipment the supply company acted as commission merchant and agents for appellant and his assignors and bound itself to account to them for the proceeds of the sale of the cotton, but, instead of doing so, embezzled the proceeds from the sale of said cotton over and above the amount advanced. It is alleged the money was used by the Lockney Supply Company in its business and so intermingled with the assets of the corporation that the particular sum and sums due appellant and others on account of the cotton that the same could not be identified. It is further averred that the appellees, except Wallingford, who are denominated trustees in the charter incorporating the Lockney Supply Company, had knowledge of the facts of the misapplication and appropriation by said company of the said sums of money, or, if they did not have actual knowledge of said facts by reason of their office, they were chargeable with the knowledge of the embezzlement and misap-

plication of the several sums of money which the cotton owners were entitled to receive, and that each are jointly and severally liable to appellant therefor. That R. I. Wallingford, by virtue of the deed of trust, did not take title to said assets as against appellant's demand, and that the money derived from the sale of the cotton belonging to appellant having been merged and intermingled with the assets of the said Lockney Supply Company, and a large portion of which is now in the possession of the said trustee Wallingford, appellant in equity is entitled to have his demand paid and satisfied out of said assets so in the hands of said trustee. It is also alleged that the supply company used the proceeds from the sale of the cotton to increase the assets of the company in connection with the mercantile business to the amount of appellant's demands, and that Wallingford, its trustee, has in his possession enough to cover the trust fund claimed by appellant, and that appellant is entitled to be preferred and should have priority of payment as against the general creditors.

The appellees, the directors, answered by general and special exceptions and general and special answer, and appellee R. I. Wallingford answered by general and special exceptions and general and special answer. The court sustained the directors' general and first special exception to the plaintiff's petition, and, the appellant declining further to amend such, appellees were discharged by the judgment of the court rendered in their favor. Judgment was taken against the Lockney Supply Company by default, and, upon issues joined between the appellant and R. I. Wallingford, the court rendered judgment that appellant was not entitled to a preference lien in payment out of the proceeds, but had established a right to recover from the supply company the sum of $1,008.12; that Wallingford go hence without day, but that appellant recover said sum against the supply company. Appellant dismissed A. R. Merriwether from the suit. Appeal is prosecuted from this judgment. The case was tried before the court without a jury, and the case is in this court on the pleadings and findings of the trial court and without a statement of facts.

The first assignments of error complain at the action of the court in sustaining the general and first special exception of C. R. McCollum, H. Z. Pennington, R. E. Haldey, and O. R. McCollum, and in rendering judgment in their favor. The special exception to the petition is in effect that it is insufficient as to the appellee directors because it is multifarious and because appellant seeks to recover from various and different defendants upon different causes of action. From the brief of appellant and appellees on this branch of the case, we gather from the proposition that the general exception was as sustained on the ground that the directors and trustees are not shown by the petition to be personally liable for a conversion of the proceeds from the sale of the cotton.

[1] First, we think the trial court was in error in sustaining the first special exception to the petition, because it was multifarious as to parties and cause of action. We think it was not such as to either. The cause of action in this case was the misapplication of the proceeds belonging to appellant to swell the assets of the supply company, and that its directors, as trustees, knew of such misapplication, or should have known of such acts. Wallingford was in possession of the assets under a deed of trust into which the proceeds had been merged. We see no reason why all the parties in any way connected with the proceeds and the merger should not be joined in the same suit, and in fact, we think they should be.

[2] Multiplicity of suits is not favored in this state. The fact that there is an allegation of misrepresentation as to the solvency of the corporation does not appear to have been alleged as the cause of action against the directors personally, but is more in the nature of inducement and a recitation of the facts under which the corporation was transacting its business under the direction of its officers. The cotton and the proceeds were therefore intrusted to it, but the gravamen of the complaint is the corporation appropriated the proceeds to its own use and benefit. All parties who acted together in the unlawful appropriation of the funds are liable to the appellant, whether as individual, corporation, or trustee. If the proceeds could be traced into the hands of the trustee under the rules of law and equity, then appellant was entitled to recover thereon.

[3] "Multifariousness in equity pleading is the improperly joining in one bill distinct and independent matters, and thereby confounding them; as, for example, the uniting in one bill several matters perfectly distinct and unconnected against one defendant, or the demand of several matters of a distinct and independent nature against several defendants in the same bill." Bank v. Texas Investment Co., 74 Tex. 421, 12 S. W. 101. "The suit here, in the main, is for the recovery of one debt only, and a judgment is sought against several parties, who have, as is alleged, made themselves successively liable for its payment." Id.; Townes on Pleading (2d Ed.) 428–432; Seale v. Baker, 70 Tex. 283, 7 S. W. 742, 8 Am. St. Rep. 592. This is a suit against several wrongdoers in misappropriating the proceeds of cotton held in trust. It is not a suit for misrepresentation and consequent damages joined with that cause, but for the proceeds or the value of cotton against all the parties wrongfully withholding or converting it. It is one and the same transaction. We quote from the syllabus of Sweet v. Montpelier Savings Bank, 69 Kan. 641, 77 Pac. 538, which we find supported by the opinion: "Where mon-

ey has been wrongfully converted to the use of a corporation, and the assets of the corporation, by its insolvency, have come into the hands of a receiver, * * * as a trust fund, does not preclude the maintaining of an action to recover against the parties by whose wrongful act the funds were converted; the two remedies not being inconsistent." The above case was a suit against the managing officers of the bank, in which a personal judgment was sought against them for conversion of the funds. The suit was instituted after the plaintiff therein had intervened in the federal court, where the estate of the insolvent bank was being administered, asking by his intervention to have his claim declared a first lien. If the two remedies were not inconsistent, they in this state could be joined in one suit and all the issues settled therein. Of course there could be but one satisfaction, but that does not militate against their being joined. The trial court should have overruled the first special exception, and erred in sustaining it.

[4] We think it is clearly held in this state that the directors of a corporation are personally liable for false representations made by them to an injured party, whether they know they are false or not. Seale v. Baker, 70 Tex. 283, 7 S. W. 742, 8 Am. St. Rep. 592; Giddings v. Baker, 80 Tex. 308, 16 S. W. 33; Kinkler v. Junica, 84 Tex. 116, 19 S. W. 359; College Park Electric Line v. Ide, 15 Tex. Civ. App. 273, 40 S. W. 64. We are not cited to any cases in this state in which it is held that directors are liable for the misapplication of funds held in trust by the corporation, nor have we found any directly in point, but we see no distinction in principle from the cases above cited. It is alleged the corporation in this case was intrusted with funds which it appropriated to its own use, and that the directors knew or ought to have known thereof. It is usual to sue the corporation direct for loss by the corporation, and a suit against the directors or managing officers is somewhat out of the ordinary. There are two lines of authorities in America on this question; one holding that such officers are liable for ordinary negligence, and the other that such officers are not liable for mere acts of negligence.

[5] It may, we think, be stated as the rule that managing agents of a corporation, whether they be directors or trustees, mingling money collected for another with the funds of that institution, in violation of the instruction of the owner, or who knowingly permit their subordinates to do so, and the fund is thereby lost, such managing officer will be personally liable therefor.

[6] The relation of a director to stockholders or to the corporation, we think, is one of trustee, as held by the weight of authorities (2d Thompson on Corporation, §§ 1268–1269); but as to creditors or strangers they are agents of the corporation. "A director,

even under the doctrine that he is an agent, is liable to his principal for breach of duties he has assumed. This is denominated a liability for nonfeasance. So a liability exists for a trespass, fraud, or other wrongs which he may commit against third persons while discharging the duties of such agency. This is usually denominated a liability for misfeasance. In the latter class, when the wrong was done or committed in the course of agency, or where it was directly authorized by the principal, both principal and agent are liable, either jointly or severally. Directors stand toward strangers in the same relation in which any other agent stands towards third persons. * * * The agent is personally liable to third persons for his own misfeasance and positive wrong, but he is not in general liable to third persons for his own nonfeasance or omission of duty in the course of his employment. His liability in these latter cases is solely to his principal; there being no privity between him and such third persons, and the privity exists only between him and his principal." Id. 1295. "Directors and officers of private corporations are personally liable for trespasses and other acts of malfeasance or misfeasance committed as to strangers to the corporation. The fact that the corporation itself is liable does not relieve the trespassing officer either from joint or several liability, and in such cases a trespassing officer or director cannot relieve himself on the ground that he acted officially." Id. 1300. It is expressly held in Sweet v. Montpelier Savings Bank, 73 Kan. 52, 84 Pac. 544: "When the managing agents of a trust company mingle money collected for another with the current funds of the company for use in its business, in violation of the express directions of the owner to remit, or knowingly permit their subordinates to do so, and the fund is thereby lost, such agents will be personally liable to the owner therefor, although, at the time of such misappropriation, it was the intent of such managing agents to account for and return the money to the owner upon demand." It is also held in that case that a fraudulent intent is not necessarily an essential element in the case. See, also, the same case, 69 Kan. 641, 77 Pac. 538; 2d Cook on Corporations, § 682, and note beginning on page 2079. We cite the case of Fidelity, etc., v. Wiseman, 103 Tex. 286, 124 S. W. 621, 126 S. W. 1109, on the liability of an acting officer of a corporation where the officer was guilty of culpable negligence.

[7] We think from the authorities in this state, as well as others cited, that if the directors knowingly appropriated the proceeds of the cotton to the use of the corporation, or knowingly permitted the corporation to do so, or if the facts and circumstances were such as to charge them with knowledge of such appropriation, they and the corporation would be jointly and severally liable for the loss. The situation of the directors and

their connection with the corporation and with the particular fund in question will, under the circumstances surrounding them, determine their liability. Under this rule they may all be liable or only a part. The facts must determine who, if either of them, are liable. We believe the court was in error in sustaining the general exception and in dismissing the appellees directors and in rendering judgment in their favor.

The appellant also seeks to reverse the judgment of the trial court as to R. I. Wallingford. The trial court finds substantially that the Lockney Supply Company was incorporated under the laws of Texas the 30th day of March, 1912, to carry on a general mercantile business, with a capital stock of $25,000. The assets of the company consisted of two stocks of goods. The corporation began business in the town of Lockney, Floyd county, and continued in business until the 12th day of February, 1913, during which time it became insolvent, and on the date last mentioned conveyed to R. I. Wallingford, by deed of trust, all the property belonging to the corporation for the benefit of all of its creditors, to share equally in the trust. R. I. Wallingford took charge of the assets and proceeded to administer under the deed of trust. The court finds as follows:

"I find that on August 26, 1912, the Lockney Supply Company made its note to W. D. Cleveland and son, cotton commission merchants at Houston, Tex., in the sum of $5,-000, and obtained a loan of that sum for the purpose of paying its past due indebtedness, and that said money was so used by it.

"(5) I find that during the fall and winter of 1912 and 1913, and prior to its failure, as aforesaid, the Lockney Supply Company engaged in the purchase of large quantities of cotton from farmers in the vicinity of Lockney, which cotton was shipped to W. D. Cleveland & Sons, in the name of the Lockney Supply Company. A portion of said cotton, the amount not being shown by the evidence, was brought by said supply company on its own account, and some of it was received from the farmers who raised it to be shipped by the Lockney Supply Company to W. D. Cleveland & Sons, receipt being given the farmers in each instance showing the number of bales and the weight thereof, and stating the amount of money that was advanced to the owner in each instance, with the further agreement that when sold, if there should be any profit, it should go to the owners of the cotton, and, if there was any loss, the owners would pay the same to the Lockney Supply Company when the cotton should be sold. That under such agreement there was delivered to the Lockney Supply Company, on divers dates during the months of September, October, November, and December, 1912, the cotton set forth in the exhibit to plaintiff's petition. The owners of same being respectively J. V. Gilley, J. F. Dollar, C. E. Wells, W. H. Pope, R. C. Coving-

ton, S. J. Verden, and J. W. Underwood. The number of bales so delivered by said farmers being 52, which was only a small portion of the total amount of cotton handled by the Lockney Supply Company during the season of 1912–13, during which time said Lockney Supply Company from time to time drew on W. D. Cleveland & Sons against the cotton shipped to said firm. The said Cleveland Company holding said cotton as security for the money so drawn until a few days before the deed of trust was given, at which time Cleveland & Sons sold all of the cotton on hand shipped by Lockney Supply Company during the whole season of 1912–13, amounting to nearly 800 bales, and gave the Lockney Supply Company credit on its indebtedness for the amount of such cotton, after deducting what had already been advanced to said company, leaving a balance still due Cleveland & Sons of $4,606.07, and I find that the balance due by Lockney Supply Company on said 52 bales in controversy, after deducting amounts previously advanced to the farmers who owned same, totals $962.38 at the time the deed of trust was given. I find that the money received from Cleveland & Sons on the cotton shipped during the season of 1912–13 was used in the business of the Lockney Supply Company in the purchase of property of various kinds, but just how much was used in the purchase of real estate is not shown, nor has it been shown how much was used in the business at Lockney and how much at Quitaque, nor was it shown how much was used in the purchase of cotton shipped by said Lockney Supply Company on its own account during the season of 1912–13, nor was it shown how any of the money owing by Lockney Supply Company to said cotton farmers or either of them was used, except in a general way. None of said money being traced either separately or collectively into the purchase of any specific property."

The court finds also as a conclusion of law:

"That the proceeds of the cotton belonging to the plaintiff and his assignors have not been traced into any specific property into the hands of the trustees, and that it would be inequitable to apply any of the property in his hands or the proceeds thereof to the payment of any preference claim on the part of the plaintiff or his assignors."

[8] The appellant rests his right of recovery against the trustee on the rule that when property has been wrongfully appropriated by another and can be found or its substantial equivalent, if the form has been changed, will be impressed with the trust in favor of the owner, and if the trustee has mingled the trust funds with his own, he will be deemed to have used his own. From an examination of the court's findings, we think it clear that the proceeds of the cotton was not traced into the hands of the corporation and conveyed by the deed of trust. This the appellant was required to do in order to establish his equitable lien and thereby ob-

tain a preference over other creditors. "Now, then, the question is: Has the appellant a lien upon the general assets in the hands of the receiver for the proceeds so appropriated? We think not. To hold the affirmative on this proposition would be to declare that every one who receives the money of another in a fiduciary capacity and expends it in the payment of his own debts thereby creates a lien upon his entire estate in favor of the owner of the money so expended, but this is clearly contrary to the doctrine of constructive trusts. The true rule is that the trust estate must be clearly traced into other specific property in order that the cestui que trust may claim either the property or the lien upon it." Bank v. Weems, 69 Tex. 489, 6 S. W. 802, 5 Am. St. Rep. 85. The finding of the trial court, we think, clearly brings this case within the rule stated by our Supreme Court, and this rule is supported by a great number of cases, among which may be noted those cited by both appellee' and appellant: Mills v. Swearingen, 67 Tex. 269, 3 S. W. 268; Bank v. Wheeler, 12 Tex. Civ. App. 489, 33 S. W. 1093; Peters Shoe Co. v. Murray, 31 Tex. Civ. App. 259, 71 S. W. 977; Spokane v. Bank, 68 Fed. 979, 16 C. C. A. 81; Little v. Chadwick, 151 Mass. 109, 23 N. E. 1005, 7 L. R. A. 570; In re Marsh et al. (D. C.) 116 Fed. 396; Slater v. Oriental Mills, 18 R. I. 352, 27 Atl. 443; Peters v. Bain, 133 U. S. 670, 10 Sup. Ct. 354, 33 L. Ed. 696.

We think the trial court's refusal to declare a lien and preference out of the assets held by the trustee in favor of appellant, under the facts found by him, was correct, and the judgment in that particular should be affirmed. We deem it unnecessary to discuss other questions presented by appellant and appellees. The judgment as to C. R. and O. R. McCollum, H. C. Pennington, and R. E. Hadley will be reversed for the reasons given by us in this opinion. The judgment dismissing A. R. Merriwether and refusing to establish a lien on the property in the hands of Wallingford as trustee, and to require him to pay the appellant's claim as a preferred debt over other creditors, is affirmed.

Reversed in part, and affirmed in part.