## No. 2373.

## A. B. SEALE v. WILLIAM R. BAKER ET AL.

1. BANKS.—The directors of a banking corporation are personally liable at the suit of an individual depositor for damages sustained by reason of the insolvency of the corporation, when the depositor is induced to place money in the hands of the corporation solely by representations of solvency made to the general public by the directors, who ought to have known, and by the use of ordinary care, such as it was their duty to have exercised, might have known, that such representations were false.

2. SAME.—Such directors are so liable to such depositor, when such false representations are knowingly made with intention to defraud the public generally.

3. SAME.—Such directors are so liable when such false representations are made in pursuance of a fraudulent combination, and common design upon their part to give to the corporation a fictitious credit that the business might be continued for the purpose of enabling such directors to collect loans claimed to have been made by them to the corporation.

APPEAL from Harris. Tried below before the Hon. James Masterson.

The opinion states the case.

*Scott & Levi*, for appellant: The defendants (appellees) as directors of the Houston City Bank, an incorporated institution, were chargeable with the knowledge of its condition during their tenure of office as directors, even though in fact they were ignorant thereof. (Eaglesfield v. Londonderry, 4 Ch. Div., 693, 704; Burroughs v. Locke, 10 Ves. 470; Slim v. Groucher, 1 De Gex, F. & J., 518; Stone v. G. W. Oil Co., 41 Ill. 85; Bigelow on Estoppel, 538; Wade on Notice, sec. 11; Morse on Banking, 125, 131 et seq; Lyman v. Bank, 12 How., 225; 1 Blatch. C. C., 297; Gillett v. Phillips, 3 Kern, 114; Bank v. Rudolf, 5 Neb. 527.)

The defendants (appellees), as directors of the bank, were trustees or quasi trustees for the stockholders and creditors of the bank, and as such were in duty bound to suspend the operation of the bank upon its becoming or being insolvent, and the continuance of the business to the manifest prejudice of the stockholders or creditors, was such a violation of their trust as

to render them personally liable for the losses sustained by any stockholder or creditor by reason of such continuance. (Moak's Underhill on Torts, 523; 4 C. L. J., 47; 3 Mo. App. Rep., 584; McLean v. Heald, 67 N. Y., 598; 2 Lansing, N. Y., 81; Delano v. Gardner, App. Ct. Ill., reported Banker's Magazine, March, 1886, page 686; Morse on Banking, 116; United Society v. Underwood, 9 Bush, 609; Shea v. Mabry, 1 R. J. Lea (Tenn.), 319; Field on Corporations, 170, 171; Percy v. Millendon, 3 La., 585; Jackson v. Ludeling, 21 Wall., 616.)

The appellees were liable to plaintiff because their representations, expressed and implied, were knowingly and willfully made to deceive plaintiff, along with the general public, as to the true condition of the bank, and because by said representations so made, and which were received by plaintiff with full faith, he was induced to place and leave his money in said bank, and thus lose the greater part of it. (3 Sutherland on Damages, 583, 587, 588, 589, and notes.

A fortiori are appellees liable to plaintiff for his losses as aforesaid, for that not only were said false representations willfully and knowingly made by appellees, but further because they were made with a common design to deceive and induce, and did deceive and induce, plaintiff and the public at large to make deposits in and extend credit to said bank, to the end that certain of the directors, appellees, might utilize the assets thus secured, to pay pretended or real claims in their own favor, against said bank, and which debts, if contracted at all, were contrary to and unauthorized by the laws under which said bank was created, and were made, if at all, for the purpose of giving to the bank a fictitious credit and financial standing. (Morse on Banking, 142, 143 et seq.; Lippincott v. Shaw Carriage Co., 25 Fed. Rep., 577; Field on Corporations, secs. 171, 172, 173, 174, and authorities cited; Drury v. Cross, 7 Wall., 302; Railroad Co. v. Howard, 7 Wall., 392; Jackson v. Ludeling, 21 Wall., 616; Green's Brice's Ultra Vires, 553.)

*Hutcheson, Carrington & Sears, Goldthwaite & Ewing* and *Baker, Botts & Baker,* for appellees: So long as the corporation continues a "going concern," it is a distinct person, and the directors are mere agents of the corporation, trustees (if at all) of the stockholders alone, and utter strangers to the creditors; and it is only when business is suspended, and undisposed of assets remain, that a court of equity, to supply a remedy, will

treat the directors in possession as trustees, and deal with those assets as trust funds, to be administered for the benefit of the creditors and stockholders. (Graham v. Railway Co., 12 Otto, 161; Thomp. Liability of Officers and Agents of Corporations, 398, 401–403; Bank v. Whittle, 6 Am. and Eng. Cor. Cases, 298; Buell v. Buckingham, 16 Iowa, 284; Whitwell v. Warner, 20 Vt., 425; Gordon v. Preston, 1 Watts, 385—corporate assets; Ashurst's Appeal, 60 Pa. State, 290—corporate assets sold to corporation; Railroad Co. v. Cleghorn, 1 Spear's Eq., 545; Williams v. Jackson County Patrons of Husbandry, 5 West. Rep., Mo., 105; Catlin v. Bank, 6 Conn., 233—suit against assets of corporation; Sargent v. Webster, 13 Metc., 497—insolvent corporation may use property to pay its debts; Smith v. Skeary, 47 Conn., 47; Merrick v. Peru Coal Co., 61 Ill., 472—director may deal with company; Hayward v. Pilgrim Society, 21 Pick., 270; Smith v. Lansing, 22 N. Y., 526; City of St. Louis v. Alexander, 23 Mo., 283; Murray v. Vanderbilt, 39 Barb., 140; Stratton v. Allen, 1 C. E. Green, 229; Van Hook v. Somerville Manuf. Co., 1 Halst. Ch., 137, 633; and see English authorities generally, especially Poole's case, 9 Ch. Div., 322, 328.)

The appellant's petition is insufficient in law as an action of deceit for false representations. That the representation must have been distinct, clear and certain, and not an expression of opinion or general assertion of matters. (Dunn v. White, 63 Mo., 186; Anderson v. Hill, 12 S. & M., 679; Turk v. Downing, 76 Ill., 71; Dormitzer v. Dreve, 3 Mo. App., 595.)

That representations of value, quality, situation, excellency, and like statements, are mere matters of opinion, for which no action will lie. (Schramm v. O'Connor, 98 Ill., 359; Banta v. Palmer, 47 Ill., 99; Miller v. Craig, 36 Ill., 109; Vernon v. Keyes, 12 East., 632; Saunders v. Hatterman, 2 Ired. Law, 32; Credle v. Swindell, 63 N. C., 305; Hartman v. Flaherty, 80 Ind., 472.)

That it is the duty of the party to verify such affirmations, or he relies upon them at his peril. (Chester v. Comstock, 40 N. Y., 575; Dupont v. Payton, 2 E. D. Sm., 424; Ellis v. Andrews, 56 N. Y., 83; Schanck v. Morris, 7 Rob., 658.)

That if the party has been fraudulently prevented from verifying such affirmations, this fact must be specifically alleged, and not be left to inference or charged in general terms, or no cause of action is shown. (Parker v. Moulton, 114 Mass., 99; Gordon v. Parmlee, 2 Allen, 212; Brown v. Castles, 11 Cush., 348; Veasy v. Doton, 3 Allen, 380.)

That appellant's petition is insufficient in not showing that appellees, by any act, prevented him from making examination as to the truth of the general assertions alleged, or that he could not have discovered the truth by ordinary diligence. (Authorities last cited, and Mooney v. Miller, 102 Mass., 220.)

That the false representations must not only be calculated to deceive, but they must be made with intent to deceive. (Stafford v. Newsom, 9 Ired., 507; Munro v. Gardner, 3 Brev., 31; Gibbs v. Odell, 2 Cold., 132; Bond v. Clark, 35 Vt., 577.)

That it must be alleged defendants knew the representations were false. (Collins v. Evans, 5 Q. B., 820; Terrell v. Bennett, 18 Ga., 404; Walten v. Callahan, 26 Ga., 366; Hopper v. Sisk, 1 Ind., 176; Holmes v. Clark, 10 Iowa, 423; Taylor v. Frost, 39 Miss., 328; Morton v. Scull, 23 Ark., 289.)

That directors of a corporation are not chargeable with notice of its affairs, and are not liable if ignorant of the falsity of the statements made. (Wakeman v. Dalley, 51 N. Y., 27; Hume v. Bank, 4 Am. and Eng. Corp. Cases, 212; In re Denham & Co., 5 Id., 259.)

That representations honestly believed to be true, though false, afford no breach of duty. (Russell v. Clark, 7 Cranch, 69, 2, 94; Young v. Covell, 8 Johns, 25; Thom v. Bigland, 8 Exch., 26; Bank v. Sells, 3 Mo. App., 85.)

That the representations must have been the very ground upon which the plaintiff acted and was damaged. (Ming v. Woolfork, 116 U. S., 599; Rutherford v. Williams, 42 Mo., 18.)

ACKER, JUDGE.  The court below sustained general demurrers to the petition and dismissed the suit, from which judgment this appeal is taken.  It now devolves on us to determine whether or not, on the case stated in the petition, appellant is entitled to recover.

It is alleged in the petition that on the nineteenth day of December, 1885, and for one year preceding that date, appellees were directors of the banking corporation, "The City Bank of Houston," actively directing and controlling its affairs and the conduct of its said business, and representing themselves and were generally and publicly known as such, and well knew and ought to have known, and by the use of ordinary care and of such as it was their duty to have exercised, might have known, all and singular, the particulars and conditions of said

corporation in respect to the matters hereinafter mentioned, at the time when they severally transpired and took place.

That during the period aforesaid the said defendants, who were all well and publicly known as possessed of remarkable business capacity, carried on the business of said bank and held it out to the public as of undoubted financial ability and deserving of public confidence, and daily and continuously caused to be published, by their authority and direction, in the interest and behalf of said bank, advertisements in the Houston Daily Post, a daily newspaper and journal of general and wide circulation throughout the State of Texas and elsewhere, published in said city of Houston, and in city directory of the city of Houston, a printed book of reference in general public use, and upon conspicuous sign boards kept and exposed to the public at and near the door of the place of business of said bank, and upon printed letter heads, upon and with which the business correspondence of said bank was conducted and so generally circulated among all persons, including this plaintiff, having any transactions or correspondence with said bank, advertisements, statements and representations to the effect and in substance that the said bank had a capital of five hundred thousand dollars, was in sound financial condition, fully solvent and wholly reliable and well deserving of public trust and confidence. That in truth and in fact the said advertisements, statements and representations so caused to be published by said defendants were at the time they were severally so published wholly false and untrue, and the said bank, at the said time, did not have a capital of five hundred thousand dollars and was not in sound financial condition, nor solvent, nor reliable, nor in any manner or wise deserving of public trust and confidence, but on the contrary, had long before lost all of its capital and a greater portion of its funds and assets which had come into its hands from its creditors, depositors and customers, and was and long had been hopelessly and irretrievably insolvent: for several years its current expenses had exceeded its earnings; its affairs had been and continued thereafter growing daily worse; it had been and then was and thereafter continued doing business upon a wholly fictitious credit, and from and after September 20, 1885, if not before that time, all reasonable hope and prospect of retrieving its solvency was utterly gone, and it was a mere question of a very short time when the true condition of said bank would necessarily become notori-

ous, and it would be compelled to suspend business, to the great loss of its creditors and customers; and in the exercise of good faith and justice to the public its business should have been suspended and wound up long before the eighth day of December, 1885.

That plaintiff read and believed said advertisements, statements and representations, and relying thereon and induced thereby, and not otherwise, he did, on the eighth day of December, 1885, place in said bank for collection and to be placed to his credit a draft for two thousand five hundred dollars, which was collected by said bank and the proceeds placed to his credit therein as a customer of said bank. That on the nineteenth day of December said bank closed its doors and suspended business, in a wholly insolvent condition, whereby plaintiff has sustained damage.

It is also alleged that said "false advertisements, statements and representations were caused, to be published by said defendants with intent to deceive, and they did deceive the public and plaintiff, as to the true condition of said bank, and to induce the public and plaintiff to confide in and extend credit to and make deposits in said bank. It is further alleged that said advertisements, statements and representations were published as aforesaid in pursuance of a common design on the part of said defendants, in which they all joined, to give said bank a fictitious credit, wholly unwarranted in fact, and to induce thereby the public, and this plaintiff, to extend credit to and to make and to keep deposits in said bank, and that from and after the twentieth day of September, 1885, the said defendants had no hope, in reason or in fact, of restoring said bank to solvency or of in any wise improving its condition, and its further continuance in business was by them designed and effected merely for the purpose of enabling certain of said directors to save themselves in respect of transactions with said bank upon which they claimed said bank was liable directly or indirectly to them, and this at the expense and sacrifice of such persons as might happen to have funds in said bank when such design should be accomplished, and all the deposits received and credits contracted by said bank from the said twentieth day of September, 1885, until its suspension, were received and contracted without any prospect of making good or paying such liabilities, except partially only and in so far as they might happen to be withdrawn and demanded in

current transactions before the purpose aforesaid of continuing said business should be accomplished.

That the transactions aforesaid, which were designed to be protected and secured by the further continuance of the business of said bank consisted of pretended loans of money and accommodation paper by the said William R. Baker and Robert Brewster, and S. K. McIlhenny and by the McIlhenny Company, a corporation whereof the said S. K. McIlhenny was and still is the president, manager and principal stockholder.

For the purpose of promoting conciseness and simplicity, we formulate the questions involved in this appeal as follows:

I.　Are the directors of a banking corporation personally liable at the suit of an individual depositor for damages sustained by reason of the insolvency of the corporation, when the depositor is induced to place money in the hands of the corporation solely by representations of solvency made to the general public by the directors, who ought to have known, and by the use of ordinary care, such as it was their duty to have exercised, might have known, that such representations were false?

II.　Are such directors so liable to such depositors, when such false representations are knowingly made with intent to defraud the public generally?

III.　Are such such directors so liable when such false representations are made in pursuance of a fraudulent combination and common design upon their part to give to the corporation a fictitious credit that the business might be continued for the purpose of enabling such directors to collect certain pretended loans claimed to have been made by them to the corporation?

If either of these questions is answered in the affirmative, it follows that the court erred in sustaining the demurrers, and the judgment must be reversed.

After a more than ordinarily careful investigation, we conclude that each and all of them must be answered affirmatively, which dispenses with the necessity for a separate discussion of each, for, if appellees are liable under the circumstances stated in the first, *a fortiori*, they are liable under the circumstances stated in the second and third of these questions.

Directors of banking corporations occupy one of the most important and responsible of all business relations to the general public.　By accepting the position and holding themselves out to the public as such they assume that they will supervise and give direction to the affairs of the corporation, and, im-

pliedly, contract with those who deal with it, that its affairs shall be conducted with prudence and good faith. They have important duties to perform toward its creditors, customers and stockholders, all of whom have the right to expect that these duties will be performed with diligence and fidelity, and that the capital of the corporation will thus be protected against misappropriation and diversion from the legitimate purposes of the corporation. Customers are invited to business relations and are induced to accept and act upon such invitation by the representations that the institution is solvent and owns a certain amount of capital, and that this capital is under the supervision and control of certain directors. It is the duty of directors to know the condition of the corporation whose affairs they voluntarily assume to control, and they are presumed to know that which it is their duty to know, and which they have the means of knowing.

If the representations are false, but relied and acted on by a customer to his damage, to hold that in such case the directors who made such false representations are not liable because they were ignorant of the falsity of such representations, would be to award a premium for negligence in the performance of important and almost sacred duties voluntarily assumed, and to license fraud and deception of the most flagrant and pernicious character. It is a familiar principle of law that an action for damages lies against a party for making false and fraudulent representation whereby another is induced to do an act from which he sustains damage. If the representations are untrue, it is immaterial that they may have been made without fraudulent intent, and it is sufficient that they were made to the general public, if the appellant was induced thereby to deposit money in the bank. We think it can make no difference as to the liability of appellees that they made the representations as directors of the corporation.

We proceed now to notice some of the authorities which we think support our conclusions. Bigelow, in his work on Estoppel, 538, after reviewing many authorities, states the rule as follows: "In accordance with the principles in these cases, it is held that directors of corporations, being bound to know the proceedings of the body, can not escape the effect of representations made by them concerning the acts of the corporation by the allegation of ignorance." In Field on Corporations, sections 170 to 174, inclusive, it is said: "Where the

directors of an insurance company had fraudulently caused false statements to be officially made as to the condition of the company, it was held that they were personally liable to a party who had suffered damage thereby." The directors are generally only bound in the management of the affairs of the corporation to use reasonable diligence and prudence—that is, to such diligence and prudence as men usually exercise in the management of their own affairs of a similar nature, and if they act in good faith they are not personally responsible to stockholders for a loss that may be sustained thereby. But a director may be liable in damages for his fraudulent act. And it has been held that a director is personally responsible not only for fraud and willful neglect, but also for his negligence, especially gross negligence.

It will be apparent from what has been said that the relation not only of principal and agent exists between the corporation and the director, but also the relation of trustee and *cestui que trust* exists between them and the stockholders and creditors. Accordingly, they have no right to enter into or participate in any combination the object of which is to divest the company of its property and obtain it for themselves, to the prejudice of members or creditors. Nor are they entitled to any share of capital stock or any dividends of profits until its creditors are paid. This doctrine would, of course, be applicable in all cases of fraudulent or wrongful disposition of the corporate funds or property by directors. For, as agents and trustees of the corporation, as well as the stockholders and creditors, they would be bound to perform their duties and administer the trust in good faith.

The fiduciary character of directors referred to, is such that the law will not permit them to manage the affairs of the corporation for their personal and private advantage, when their duty would require them to work for and use reasonable efforts for the general interest of the corporation and its stockholders and creditors. The confidence thus reposed in them can not be thus abused with impunity; and they can not use their position to promote their own interest in respect to anything thus intrusted to them, to the prejudice of creditors or other members.

In Morse on Banks and Banking, 131, et seq., it is said: "Whatever knowledge a director' has, or ought to have officially, he has, or will be conclusively presumed at law to have, as a private individual. Thus a director is affected with notice of

the condition and transactions of the bank. If the bank is insolvent, or if it offers him for purchase notes which could only be legally sold by authority of a directional vote which has not been given, he is affected with knowledge of the insolvency, and of the illegality of the notes." (Lyman v. Bank, 12 How., 225.)

The same author, page 133, says: "If bank directors do not manage the affairs and business of the bank according to the directions of the charter and in good faith, they will be liable to make good all losses which their misconduct may inflict upon either stockholders or creditors or both. They may be held to account to an injured party in a court of chancery, or they or any one of their number who shared in the wrong doing may be sued at law for damages."

In 3 Sutherland on Damages, pages 587 and 588, it is said: "If the persons making the representations which are material, and which he intends shall influence another, knows them to be false, the case is clear. Some question has been raised whether positive representations made without knowledge, and believed to be true by the party making them, will sustain an action for damages in the nature of deceit. But the doctrine which seems supported by the great weight of authority is, that if a person states as of his own knowledge material facts which are susceptible of knowledge, to one who relies and acts upon them as true, it is no defense, if the representations are false, to an action for deceit, that the person making them believed them to be true. The falsity and fraud consist in representing that he knows the facts to be true of his own knowledge, when he has not such knowledge. It is not necessary that the false representations be made to deceive the plaintiff in particular."

In 3 Wait's Actions and Defenses, 436, it is said: "It has been laid down as settled law that if a party makes representations in such a manner as to impart a knowledge in him of facts, whilst in fact he has no knowledge of the facts, and the representations are made with the intent that another shall rely on them, and those representations turn out to be false, it is as much a fraud as if the party making them knew them to be untrue." See also Kerr on Fraud and Mistake, 111, 324, 325.

In Gillett v. Phillips, 13 New York Court of Appeals, 117, it is said: "By accepting the office of director he assumed a duty to the stockholders and creditors of the bank to inform himself

of what would appear by an inspection of the books of the institution of which he was one of the ostensible managers, and he can not urge a want of notice arising from a neglect of duty." The case of Morse v. Swits, decided by the Supreme Court of New York, reported in 19 Howard's Practice Reports, 286, was an action by a stockholder against the directors of a bank to recover of them personally, damages for a false statement published concerning the affairs of the bank, by which the plaintiff was induced to purchase stock of the bank. Gould, Judge, delivering the opinion of the court, says: "I think the tendency of all the later decisions in this country and in England is in favor of extending the liability of every one who makes a public representation which he knows to be false, and upon faith in which any one has been led into a business transaction whereby he suffers damage. I do not understand that it is at all necessary to the right of action that the representations should have been intended for the party sustaining the loss, or in any way addressed to him. If it be made openly and publicly, so that it might well come to his ears, and he acts upon it, the party making it shall answer to him for his damages. He shall not be at liberty to sow falsehood broadcast without being responsible for the loss it causes. The falsehoods may have been made for one purpose and published for that, but, being published, the public or any individual of the public has the right to believe it. It must have been the intention of the persons publishing it that it should be believed. And if, believing it, any one of the public acts on that belief, the makers and publishers of the falsehoods are to be held liable for the consequences they have caused." (See authorities cited in note at end of this decision on page 288.) The case of United Society, etc., v. Underwood, 9 Bushnell, 617, was an action against the directors of a bank to recover of them, personally, damages for loss of deposits, wrongfully converted, and it is there said. "The question here presented, is whether the directory, who had knowledge of these alleged wrongful sales, can be held to answer personally for the deposits so converted. Appellees insist that they can not be so held, because of want of privity between the depositors and themselves. They concede that for gross negligence or mismanagement upon their part resulting in loss to the bank, they may be held to account to it, but urge that, inasmuch as their undertaking was to the corporation, they can be proceeded against by it alone, and that ap-

pellants must look to the bank and not to them. This position is plausible, but it can not, in our opinion, be maintained. Bank directors are not mere agents like cashiers, tellers and clerks. They are trustees for the stockholders, and as to their dealings with the bank, they not only act for it and in its name, but in a qualified sense, are the bank itself. It is the duty of the board to exercise a general supervision over the affairs of the bank, and to direct and control the action of its subordinate officers in all important transactions. The community have the right to assume that the directory does its duty, and to hold them personally liable for neglecting it. Their contract is not alone with the bank. They invite the public to deal with the corporation, and when any one accepts their invitation he has the right to expect reasonable diligence and good faith at their hands; and if they fail in either, they violate a duty they owe not only to the stockholders, but to the creditors and patrons of the corporation."

The case of Bartholomew v. Bentley et al., 15 Ohio, 666, was a suit by an individual creditor of an insolvent bank against the officers of the bank to make them personally liable for losses sustained by the plaintiff by reason of his relying and acting upon false representations made by the defendants. It is there said: "It may be regarded as a well settled principle that for every fraud or deceit which results in consequential damage to a party he may maintain a special action on the case. The principle is one of natural justice long recognized in law. And it matters not, so far as the right of action is concerned, whether the means of accomplishing the deception be complex or simple—a deep laid scheme to swindle or a direct falsehood, a combined effort of a number of associates, or the sole effort of a solitary individual—provided the deception be effected and the damage complained of be the consequence of the deception. A valid act of incorporation, or an invalid and pretended right to exercise corporate franchises, is alike powerless to secure the guilty from the consequences of their fraudulent conduct, where it has been knowingly resorted to as the mere means of chicane and imposition, and used to facilitate the work of deception and injury. Were it otherwise it would be a reproach to the law.

"If the defendants, with the design to defraud the public generally, have knowingly combined together and held forth false and deceptive colors, and done acts which were wrong, and

have thereby injured the plaintiff, they must make him whole by responding to the full extent of that injury, and they can not place between him and justice, with any success, the charter of the bank, whether it be valid or void, forfeited or in case. * * * Nor is it material that there should have been an intention to defraud the plaintiff in particular. If there was a general design to defraud all such as could be defrauded by taking their paper issues it is sufficient, and the plaintiff may maintain his suit if he has taken the paper and suffers from the fraud.

"It is first said that to allow bill holders who have been defrauded to sue the members of the company individually at law will produce endless litigation, and when applied the remedy can not do equal justice to all the creditors, or to the members of the company. It may be that numerous suits will be prosecuted. * * * * And yet the doctrine that because they have cheated many they are safer than they would be if only one man had suffered, does not obtain in courts of justice. Again, it is said the fund sought is a trust fund, and a bill in chancery is the proper remedy. There would be much propriety in the position were it in point of fact true that a party who had been defrauded by the act of another had no redress save out of a fund composed solely of the proceeds of the imposition. In that case strict equity might require that all those whose injuries had been the source of the fund should share equitably in it. But the rule that a person sustaining damage by fraudulent acts of another can only look to a particular fund of the wrong doer for redress, never existed anywhere."

The cases of Cross v. Sackett et al. and Word v. Sackett et al., 2 Bosworth, 645, were actions brought by purchasers of stock of a corporation to recover of directors money paid for the stock, upon the ground of false representations made by the directors in a prospectus and other advertisements as to the value of the stock. In these cases it was held that the actions could be maintained, and that "there is no wrong or fraud which the directors of a joint stock company, incorporated or otherwise, can commit which can not be redressed by appropriate and adequate remedies." The case of Cazeaux v. Mali et al., 25 Barbour, 578, was an action brought by a stockholder of a corporation against the officials and directors to recover of them personally the loss sustained by plaintiff by depreciation in the

value of stock, caused by the fraudulent issue of stock beyond the authorized amount. It was there held that the action was properly brought by the plaintiff in his own name, without joining the other stockholders—the injury to each stockholder being separate and distinct from that sustained by the others— and that the action was well brought against the defendants. The case of Morgan v. Skiddy et al., 62 N. Y., 325, was an action brought by a purchaser of stock of a corporation, against the directors personally, to recover the money paid for the stock, upon the ground that plaintiff had been induced to purchase the stock by false statements made in a prospectus issued by the defendants. It was there said:

"If the plaintiff purchased the stock relying upon the truth of the prospectus, he has a right of action for deceit against the persons who, with knowledge of the fraud and with intent to deceive, put it in circulation. The representation was made to each person comprehended within the class of persons who were designed to be injured by the prospectus; and when a prospectus of this character has been issued, no other relation between the parties need be shown except that created by the fraudulent and wrongful act of defendants in issuing or circulating the prospectus and the resulting injury to the plaintiff. It is hardly necessary to say that a director of a company who knowingly issues or sanctions the circulation of a false prospectus, containing untrue statements of material facts, the natural tendency of which is to mislead and deceive the community and to induce the public to purchase its stock, is responsible to those who are injured thereby. Mere exaggerated statements of the prospects of a new enterprise will not subject those who make them to liability; but no material misstatement or concealment of any material fact ought to be permitted. The directors of a company are supposed to know the facts touching its condition and property, and their statements in respect to its affairs naturally attract public confidence. If they fraudulently unite in an attempt to deceive the public, and by false statements of facts to give credit and currency to its stock, it is but simple justice that they shall answer to those who have been deluded into giving confidence to them."

The case of Shay v. Mabry et al., 1 Lea, Tennessee, 319, was an action by a judgment creditor of a corporation against the directors to recover the amount of the judgment upon the ground that the directors had misapplied or converted the assets

of the company. It was then held that "Directors of corporations are not mere figureheads; they are trustees for the company, for the stockholders and for the creditors. They must not only use good faith, but also care, attention and circumspection in the affairs of the company, and particularly in the safe keeping and disbursement of funds committed to their custody and control. They must see that the funds are appropriated as intended to the purposes of the trust, and if they misappropriate them or allow others to divert them from these purposes, they must answer for it individually. Ignorance will not excuse when they have the means of knowledge.

The case of Delano v. Case, decided by the Appellate Court of Illinois, and reported in the Banker's Magazine for March, 1886, page 686, was an action by a general depositor against directors of a bank for permitting it to be held out to the public as solvent, when in fact it was at the time insolvent. It was there held that the directors were individually liable to the depositor. The judgment of the appellate court was affirmed by the Supreme Court in June, 1887. (Western Reporter for 1887, 625.)

The case of Edyngton v. Fitzmaurice, decided by the Court of Appeals of England in March, 1885, and published in the Central Law Journal of January 22, 1886, page 81, was an action by a purchaser of debentures of corporation against the directors to recover of them, personally, damages for false representations made in the prospectus inviting subscriptions for the debentures. It is there said: "This is what is called an action of deceit, the plaintiff alleging that statements were made by the defendants which were untrue, and that he had acted on the faith of these statements so as to incur damage for which the defendants are liable. In order to sustain such an action, the plaintiff must show that the defendants intended that the people should act on the statements, that the statements are untrue in fact, and that the defendants knew them to be untrue, or made them under such circumstances that the court must conclude that they were careless whether they were true or not. The judgment against the directors personally, was affirmed, all the judges concurring."

We might extend these quotations to much greater length, but deem it unnecessary to do so, as we think our conclusions are in accord with reason, and the established principles of justice.

Forms of action do not obtain in our practice. All suits are actions on the case, and we think it can make no material difference in determining the questions here involved, whether the suit is called an action for deceit, an action to recover damages for the violation of a trust, or an action to recover damages for negligence in the performance of a duty. We have examined, with much care, all authorities cited by counsel for appellees in their able and exhaustive brief, that are accessible to us, but none of them, we think, militate against the correctness of the conclusions expressed in this opinion. If this was a suit brought by the stockholders to recover damages resulting to the corporate property, many of appellees' authorities would apply, and we would hold, with those authorities, that appellant could not maintain the action for his individual benefit alone.

For the reasons stated, we are of the opinion that there is error in the judgment of the court below, and that it should be reversed and the cause remanded.

*Reversed and remanded.*