**COOK v. LIBERTY PIPE LINE CO. et al.*** **(No. 11246.)**

(Court of Civil Appeals of Texas. Fort Worth. Nov. 21, 1925. Rehearing Denied Feb. 20, 1926.)

1. **Joint-stock companies and business trusts** ⊙⇒17—Joint-stock association which sold all assets and retired from business held not liable in action by trustee for money advanced to carry on its business, sale of assets not having been set aside.

Where joint-stock association, through trustees, sold all assets and trustees assumed its debts and were to be reimbursed by stock issued by another corporation, and association went out of business, it was not liable in action by trustee for money advanced by him to enable association to carry on business, unless and until sale of its assets was set aside.

2. **Judgment** ⊙⇒243—Judgment cannot be entered against corporation which did not become party to suit by service, and another as to which suit was dismissed.

Where one of two nonresident corporations was never served with process, and the other was formally dismissed from suit, no judgment could be rendered against them.

3. **Novation** ⊙⇒5—Agreement that trustees of association selling its property would pay its debts held to constitute novation.

Where trustees of joint-stock association on its retiring from active business agreed to pay its debts and to look for reimbursement to

certain stock of new corporation, to which its property was sold, and agreement was assented to by stockholders of association and others concerned, there was novation, preventing trustee from holding association liable for such debts.

**4. Corporations ⬦⟹30(6)—Fraudulent representation and practices, if any, of promoters of corporation purchasing property of association, held to authorize recovery against them personally for depreciation in value of association trustee's distributive share.**

Where property of joint-stock association was sold to new corporation for its stock, fraudulent representations, if any, of promoters of new corporation, depreciating value of trustee's distributive share of stock, would authorize recovery by such trustee against promoters personally.

**5. Appeal and error ⬦⟹925(2)—Not assumed on appeal that trial court will deprive plaintiff of right to take depositions or compel attendance of witness.**

Where trial court's refusal to declare interrogatories confessed, after defendants refused to answer on deposition, was on ground that corporation was party, on appeal, where corporation is held not to be party, it will not be assumed that trial court on retrial will by any ruling deprive plaintiff of right to take depositions or compel attendance of witness.

**6. Reference ⬦⟹99(6)—Auditor's report showing amounts of indebtedness of joint-stock association to trustee, which latter assumed to pay on sale of property to corporation, held admissible.**

Where, on sale of property of joint-stock association to corporation to be formed by trustees, trustees assumed its debts and looked for reimbursement to specified stock of purchasing corporation, in suit by one of such trustees to recover for depreciation of his distributive share of such stock, auditor's report showing indebtedness of joint-stock association to plaintiff, which he had assumed to pay, was admissible in evidence.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Action by W. M. Cook against the Liberty Pipe Line Company and others. From judgment sustaining special exceptions to plaintiff's second amended petition and dismissing the suit, plaintiff appeals. Reversed and remanded.

J. A. Templeton, of Fort Worth, for appellant.

Goree, Odell & Allen and Bryan, Stone, Wade & Agerton, all of Fort Worth, Carrigan, Britain, Morgan & King, of Wichita Falls, and McLean, Scott & Sayers, of Fort Worth, for appellees.

CONNER, C. J. As developed by the pleadings, exhibits, etc., in this case, covering some 250 pages of the transcript, W. M. Cook, appellant, and W. L. Mann and W. C. Myers, in 1918, organized a stock association

known as the Liberty Pipe Line Company, for the purpose of constructing a pipe line for the transportation of oil from the Burkburnett oil fields to Wichita Falls, Tex. After the organization of the association, the line was constructed and operated under the management of said parties as trustees until about the 10th day of May, 1919, when Cook, Mann, and Myers, as trustees for the Liberty Pipe Line Company, entered into an executory contract with John G. Bryson and J. N. Thompson, whereby said company agreed to sell, and said Bryson and Thompson agreed to purchase, the property of said pipe line company, on the terms stated in said agreement, which was in writing, and a copy of which was attached to the petition. Said Bryson and Thompson were designated in said agreement as trustees, and the consideration for the purchase of the property was stated in said agreement as follows:

"For and in consideration of ten dollars ($10.00) and the following covenants and agreements on the part of the trustees to be performed:

"First. Trustees agree to form a corporation under the laws of a state to be selected by them to take over the property of said Liberty Company. above described and operate it.

"Second. Said trustees agree to transfer, and said Liberty Company agrees to receive, an amount of preferred stock in said company to be formed equal to the stock now outstanding and paid for in said Liberty Company, which stock shall be received in exchange by the trustees of the Liberty Company in full payment and satisfaction of all claims and demands of every kind and description growing out of this sale, transfer and exchange.

"Third. Said trustees agree to transfer, and said trustees of the Liberty Company agree to receive, an amount of preferred stock in said new company to be formed equal in par value to the amount of money advanced by such trustees of the Liberty Company or for which they are obligated, for and on behalf of said Liberty Company, which stock shall be in full payment of all money advanced or to be advanced by said trustees of the Liberty Company personally, and which amount shall not exceed two hundred twenty-five thousand dollars ($225,-000.00).

"Fourth. Said trustees agree to form a company with a capital of two million dollars ($2,-000,000.00), one-half preferred stock, the preferred stock to bear eight per cent., cumulative dividend. No preferred stock to be issued except to the stockholders of the Liberty Pipe Line Company, and to cover the actual costs of property and assets actually delivered to the new company, and also for additional improvements and expansion.

"Fifth. Said trustees agree to provide sufficient finance to run and operate the plaintiffs of the Liberty Company as it now exists. It is agreed that this obligation is complied with when said trustees have in their possession and can exhibit bona fide subscriptions for stock in said new corporation to be formed of not less than fifty thousand dollars ($50,000.00), payable on demand, which money shall be used

⬦⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

solely in the business of operation and maintaining said existing pipe line or new pipe lines, contemplated originally by the Liberty Pipe Line Company in its articles of association.

"Sixth. Said Liberty Company agrees to transfer all of its property, and exchange all stock upon demand by said trustees (Bryson and Thompson) when the above obligations and agreements on their part are performed, or sooner, if said last-named trustees shall deposit in the National Bank of Commerce, of Wichita Falls, the sum of fifty thousand dollars ($50,000.00) to the credit of themselves as trustees or to the credit of the new corporation so formed by said trustees to comply with this agreement.

"Seventh. The trustees, Bryson and Thompson, shall have until June 10, 1919, at midnight to execute this agreement."

A bill of sale was thereafter executed by W. L. Mann, president, and W. C. Myers, secretary and treasurer. The bill of sale, omitting immaterial parts, reads as follows:

"We, the Liberty Pipe Line Company, by W. L. Mann, W. C. Myers, and W. M. Cook, both as trustees and for ourselves personally, hereby sell, assign, transfer and set over to John G. Bryson and J. N. Thompson, trustees for the T. & B. Pipe Line Company, to be formed by them, all the property real, personal and mixed to which it is the owner or in which it has an interest, consisting of pipe and pipe lines, tanks and tankage, buildings and erections, pumps and pumping stations machinery, switch tracks and loading stations, leases on real property. rights of ways and franchises, oils, bills and notes, office furniture and supplies, mules, vehicles and autos, including all property now contracted for or in transit, it being the intent and the purpose of this description to include all property of any kind or description owned in part or in whole by the Liberty Pipe Line Company, without reservation as to its kind or character, free and clear of all liens, incumbrances, obligations or claims of any kind.

"We, personally and as trustees, covenant and agree to pay all debts, liens, and obligations of the Liberty Pipe Line Company or which may accrue by reason of this transfer and sale, and to receive preferred stock therefor, which is attached hereto and marked 'Exhibit A' for purpose of reference.

"This bill of sale shall be superseded by a detailed bill of sale containing a full legal and complete description of all of the property of the Liberty Pipe Line Company as soon as same is prepared and said Liberty Pipe Line Company and its trustees agree to do such acts, pass such resolutions and hold such meetings, and sign such papers as may be necessary to vest fully in said new company to be formed all the property of the Liberty Pipe Line Company as contemplated by said option.

"[Signed] Liberty Pipe Line Company,
　"By　W. L. Mann, President,
　　　　"W. C. Myers, Sec'y & Treas."

At a special meeting of the trustees of the pipe line company, held June 19, 1919, at Wichita Falls, Tex., as shown by the minutes of the meeting, the following proceedings were had, to wit:

"A meeting of the trustees of the Liberty Pipe Line Company was called to order by President Mann after the special meeting of stockholders, at the office of the company in Wichita Falls, Tex., June 19, 1919.

"Mr. Thompson, president of the T. & B. Pipe Line Company, notified the trustees that the T. & B. Pipe Line Company was ready to deliver the $225,000.00 of the preferred stock of said company, as provided for in the contract of sale of the property of the Liberty Company to the T. & B. Company.

"Mr. Myers moved that the certificate of stock of the T. & B. Company for 2,250 shares of the preferred stock thereof be received in full payment and satisfaction of the obligations of the T. & B. Pipe Line Company to the stockholders and trustees of the Liberty Pipe Line Company, which motion was carried and a receipt issued therefor to the T. & B. Company.

"Mr. Myers then moved that inasmuch as the trustees under and by virtue of the contract and sale of all the property of the Liberty Company to the T. & B. Company, were personally liable for the payment of all the debts, obligations and claims for oil. material, pipe tanks machinery, labor and borrowed money and whereas, the amount of $140,000.00 of the preferred stock of the T. & B. Company was delivered to the Liberty Pipe Line Company to pay the trustees for all debts, obligations and contracts paid by them personally for the Liberty Pipe Line Company, now be it resolved that said 1,400 shares of the preferred stock of the T. & B. Pipe Line Company be placed in trust with Messrs. J. N. Thompson and John G. Bryson as agents to hold same for the benefit of the trustees paying said debts personally, and to sell same as soon as practicable or as a market is established; the money therefrom to be returned to the trustees of the Liberty Pipe Line Company for the purpose of repaying the trustees the amount paid by them on behalf of the company or for which they are obligated to pay hereafter, which resolution was seconded and unanimously carried.

"Mr. Thompson then stated that he would accept said agency and trust on behalf of himself and Mr. Bryson and said stock was transferred and delivered to them.

"There being no further business before the meeting, it adjourned.

　　　　　　"W. L. Mann, President.
　　　　　　"W. M. Cook, Trustee."

As originally instituted, W. M. Cook sued the Liberty Pipe Line Company. W. L. Mann, W. C. Myers, J. N. Thompson, John G. Bryson, the T. & B. Pipe Line Company. the Omar Oil & Gas Company. the City National Bank of Commerce of Wichita Falls. the Wichita State Bank of Wichita Falls, and the Farmers', State Bank of Burkburnett, as defendants; all of whom were duly served with citation except the Omar Oil & Gas Company, which was a nonresident corporation, and as it did not answer, it was dismissed from the action. The several defendant banks were later dropped from the suit, and their connection with it need not be further noticed. The remaining defendants all answered and contested the action. The object and purpose of the suit, as set forth

in the plaintiff's pleadings, was to recover of and from the Liberty Pipe Line Company, W. L. Mann, and W. C. Myers, an indebtedness of $19,204.20, which it was charged had been incurred for money advanced by plaintiff to said company at the instance of said defendants, to enable it to carry on its business, and which amounts it was alleged said defendants had agreed to repay, but had failed to do.

The record shows that after the filing of the plaintiff's original petition and the several original answers, numerous other pleadings were filed, such as amended and supplemental petitions and answers, etc. On the 22d of March, 1923, omitting a history of the intervening proceedings, the T. & B. Pipe Line Company was dismissed from the suit on exceptions presented by it, to which action or judgment of dismissal no exceptions appear to have been taken. At a succeeding term of the court, to wit, November 15, 1923, the plaintiff presented his second amended original petition, covering some 40 pages of the transcript in this case, to which the defendants, Liberty Pipe Line Company, W. L. Mann, W. C. Myers, J. N. Thompson, and John G. Bryson, presented a general demurrer and some 40 special exceptions. Thereafter, on the 30th day of May, 1924, the parties appeared, and the court considered the general demurrer and the several exceptions presented and overruled the general demurrer but sustained each and all of the special exceptions. At the succeeding term of court, the plaintiff's case was dismissed with all costs taxed against him. The judgment of dismissal recites that the parties plaintiff and defendant appeared, whereupon it had been made known to the court that at the preceding term the exceptions above referred to had been sustained and that the plaintiff refused and declined to further amend, whereupon the court concluded that no cause of action in the plaintiff Cook remained, and accordingly dismissed the suit, to which Cook excepted and gave notice of appeal, and the case is now before us for determination on the rulings made.

It is manifest, we think, that it is impracticable for us to undertake to discuss each of the several exceptions to the plaintiff's petition, and we feel impelled to dispose of the case in a very general way. It is distinctly alleged in the amended petition under consideration that by the terms of the declaration of trust the trustees were "authorized to acquire and hold in their capacity as such, title to all property belonging to or purchased and acquired by said trust estate, and they were also authorized as such trustees to sell and dispose of all such property as acquired whenever they saw proper so to do."

[1] These trustees conveyed all property of the Liberty Pipe Line Company to Thompson and Bryson, as shown by the bill of sale hereinbefore copied, and the property was so conveyed free of all debts and obligations of the Liberty Pipe Line Company, which, as shown by the later proceedings, were assumed individually by Mann, Myers, and Cook. Unless and until such sale should be set aside, if at all, no cause of action would seem to rest in Cook, the plaintiff in this case, against the Liberty Pipe Line Company. The legal effect of these transactions between Cook, Mann, and Myers was to end the operative existence of that association. The minutes tend to show that not only did Cook, Mann, and Myers, the trustees, act voluntarily and freely, but that the same was also done with the consent of the stockholders. Stock associations of the kind in many respects have been held to be similar to partnerships, and in analogy to the rule governing partnerships, when it disposed of all of its property and wholly ceased doing business, the partnership was brought to an end. With the termination of the association, the functions and powers of the trustees as such also ended, except to wind up the business by equitably distributing among the stockholders their distributive share of the T. & B. corporation stock received as the consideration for the sale of the Liberty Pipe Line Company properties, and in this respect no stockholder of the pipe line association is complaining. So that the plaintiff's amended petition shows no cause of action against the Liberty Pipe Line Company as such, but instead, for reasons hereinafter given, one against Thompson, Bryson, Mann, and Myers as individuals.

[2] It appears from the petition that both are nonresident corporations, and the record shows that the Omar corporation never became a party to the suit by service, and that the T. & B. Pipe Line Company was formally dismissed from the suit under an order of the court, to which no exception was taken at the time. The corporations not being parties, it is manifest that no judgment can be rendered against them canceling or setting aside the incorporation of the T. & B. Pipe Line Company, or the conveyance by that company to the Omar Oil & Gas Company because of the alleged fraudulent acts and practices of Thompson and Bryson. By this it is not meant that Bryson and Thompson may not be held liable as individuals for wrongful acts or omissions that may be shown to have proximately destroyed or decreased the value of appellant's individual shares of stock in the T. & B. Pipe Line Company.

The record shows that after the purchase of the property of the Liberty Pipe Line Company by Thompson and Bryson, they in fact proceeded to have incorporated a company as had been agreed upon in the contract of sale, and that this corporation had a board of trustees resident in the state of Indiana, and that later the T. & B. corporation sold its entire holdings to the Omar corporation. No complaint is made by the plaintiff that he

failed to receive his distributive share of the $225,000 worth of stock that the T. & B. corporation gave for the properties of the Liberty Pipe Line Company. The complaint in this respect is simply that such stock has been depreciated by the mismanagement, etc., of Thompson and Bryson.

[3] The contract between the trustees of the Liberty Pipe Line Company and Thompson and Bryson provided that $140,000 in the stock of the T. & B. Company should be held in trust by Thompson and Bryson to recompense the plaintiffs Cook, Mann, and Myers for the debt of the Liberty Pipe Line Company that they had paid or would be required to pay. This was not a corporate undertaking, and until this contract shall have been set aside, in a proper action with all necessary parties before the court, it, together with the act of the incorporation of the T. & B. Pipe Line Company and its conveyance of stock to the Omar Oil & Gas Company, must be treated as binding, and if true, as alleged, that Thompson and Bryson conspired with Mann and Myers and so managed this trust property and illegally disposed of it or incumbered it as plaintiff alleges, then those trustees and coconspirators would be responsible to the plaintiff Cook as individuals for any unlawful disposition of or damage to the plaintiff's distributive share of the stock so placed in the hands of Thompson and Bryson in trust, and all competent and pertinent allegations in the petition giving plaintiff a right to recover in this respect must be sustained. By consent of all parties, the assets of the association were conveyed free of all liens, debts, and obligations of every kind, and plaintiff and the other trustees expressly consented and agreed to look to 1,400 shares in the corporation to be formed for reimbursement, and to that end appointed Thompson and Bryson trustees to administer and dispose of these shares. To these proceedings all parties consented. Upon those proceedings and terms the Liberty Pipe Line Company stockholders consented to sell, and the T. & B. Company consented to take over, the property and part with 225 shares of its stock. So that we think the whole amounted to a novated contract whereby the plaintiff, Cook, agreed to release all indebtedness of the Liberty Pipe Line Company to him and look alone to the proceeds of the 1,400 shares of the T. & B. Company stock as administered by the trustees chosen by him. His cause of action, in this respect, as already indicated, if any, is against said trustees as individuals of all misfeasances and malfeasances, if any, which prejudicially affected his interest in the stock placed in their hands,

281 S.W.—15

and for which also Mann and Myers as individuals will be liable if, as alleged, they conspired and acted with said trustees in their wrongful acts of omissions.

[4] If the foregoing views be correct, there is no occasion for an accounting between plaintiff and either of said corporations or the Liberty Pipe Line Company; nor can inquiry be made into the frauds, if any, entering into the formation of the T. & B. corporation or the sale to the Omar corporation, nor into the misapplications, overcharges, etc., of Thompson and Bryson, further than may be relevant to the issue of whether the facts alleged, in these respects depreciated the value of the plaintiff's distributive share of the T. & B. Pipe Line stock. To this extent, and for such purpose, the fraudulent representations, practices, etc., of Thompson and Bryson, if any, having such effect, are relevant and, if proven, will authorize a recovery in plaintiff's favor against them personally for all damages resulting therefrom. See Seale v. Baker, 7 S. W. 742, 70 Tex. 283, 8 Am. St. Rep. 592; Briggs v. Spaulding, 11 S. Ct. 924, 141 U. S. 132, 35 L. Ed. 662; Campbell v. Watson, 50 A. 120, 62 N. J. Eq. 396; Mechem on Agency, § 1279.

[5, 6] In view of the reversal, we will also note that it further appears that during the course of the proceedings below the plaintiff sought to take the depositions of Thompson and other defendants who declined to answer, and that application was then made to the court to declare the interrogatories as confessed. This the court refused to do, and complaint is made of the ruling. It appears, however, that the ruling was based upon the objection that at the time a corporation was a party, and inasmuch as no corporation is now a party, we will not assume that the court will by any ruling deprive the plaintiff of the right to take depositions or to compel the attendance of a witness. We will also say that, as presented, we see no objection to the auditor's report. It purports to give the several amounts of indebtedness of the Liberty Pipe Line Company to the plaintiff Cook and which Cook assumed to pay, secured, as he was, by the trust agreement relating to the 1,400 shares of the par value of $100 each in the T. & B. corporation. Of course, all proper exceptions to any finding of fact found in the report may be taken to and issues formed as provided by the statute, but we see no sufficient reason for its suppression as a whole.

We conclude that the judgment should be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.