## METROPOLITAN CASUALTY INS. CO. v. FIRST STATE BANK OF TEMPLE.

### No. 7787.

Court of Civil Appeals of Texas. Austin.

Nov. 2, 1932.

Rehearing Denied Nov. 30, 1932.

Collins & Houston, of Dallas, and Cox & Brown, of Temple, for appellant.

Winbourn Pearce, Walker Saulsbury, and Sam D. Snodgrass, all of Temple, for appellee First State Bank.

Maurice Cheek, Asst. Atty. Gen., and Walker Saulsbury, of Temple, for James Shaw, State Banking Commissioner.

BAUGH, J.

Appellee bank was insured by appellant company during the year 1928 against loss through dishonesty on the part of any employee of the bank. The term "dishonesty" was defined in the policy to include "wrongful abstraction, misapplication or misappropriation, and/or any other dishonest, fraudulent or criminal act," etc. The term "employee" embraced all officers and employees, except inactive vice presidents and directors other than officers. This suit was brought by the bank upon said policy, appellee alleging, in so far as this appeal is concerned, that on or about February 14, 1928, the president, vice president, and cashier, active officers of said bank, either conspiring among themselves, or in collusion with other members of the board of directors, had purported to declare or had illegally declared a dividend of $30,000, 10 per cent. of which was passed to the surplus, and the other $27,000 used to pay their individual debts; that such transactions were illegal, impaired the capital stock of the bank, and constituted a misapplication, misappropriation, and wrongful abstraction of the bank's funds within the terms of the policy. Judgment was recovered against appellant for $22,000; hence this appeal.

The case arose under substantially the following facts and circumstances:

The First State Bank of Temple, Tex., became insolvent and was liquidated by the state banking commissioner on December 17, 1927, and a 100 per cent. stock assessment levied against the stockholders. It was reorganized at that time under the name of First State Bank, appellee here, with a capital stock of $50,000, and to the new corporation was transferred all of the assets of the old bank, including the assessments against the stockholders of the old bank. In the newly organized bank, E. W. Moore and Wm. Maresh each owned $15,000 of the capital stock; A. J. Jarrell and W. F. Blum, Jr., owned $5,000 each; and C. C. Carson, W. W. Jennings, H. F. Blum, and T. H. Heard, $2,500 each. All of the above named, except W. F. Blum, Jr., and Jennings, were stockholders in the old bank against whom assessments had been made, and all of them except W. F. Blum, Jr., were directors in the new bank. The trial court found in his judgment as follows: "At about the time plaintiff bank was organized, the said E. W. Moore, Wm. Maresh, C. C. Carson, A. J. Jarrell, T. H. Heard and H. F. Blum agreed among and between themselves that if they should be required to pay their respective stock assessments to plaintiff bank, they would, through the guise of a dividend, re-pay to themselves all they were required to so pay into plaintiff bank, in satisfaction of said stock assessment claim; that on, to-wit February 14th, 1928, said parties did pay to plaintiff bank the aggregate sum of $22,-

000.00, in cash, in full satisfaction of its said claim against them as stockholders of the old bank, and that a short time thereafter, and on, to-wit February 21st, 1928, pursuant to the plan and scheme theretofore agreed to, said parties, through the guise of a dividend that they themselves, as plaintiff's Board of Directors, pretended to declare and have spread upon the Minutes of plaintiff's books, did take from the possession of plaintiff bank $22,000.00, in cash, of its funds, and did appropriate the same to their own use and benefit; and of said sum E. W. Moore received $9,800.00, Wm. Maresh received $6,700.00, A. J. Jarrell received $1,200.00, C. C. Carson received $1,700.00, T. H. Heard received $1,600.00 and H. F. Blum received $1,000.00."

The trial court thereupon held that appellant insurance company was liable under its policy as a matter of law, and rendered judgment against it for the sum named with 6 per cent. interest thereon from February 21, 1928. Other facts and pleadings will be outlined in discussion of the issues raised.

■ The first contention made by appellant in its first two propositions is that under the undisputed evidence there was no wrongful abstraction, misappropriation, or misapplication, or any other dishonest, fraudulent, or criminal act done within the terms of said policy, for the reason that the officers and directors charged with the management of the bank had acted openly, without concealment, at a regular meeting of the board of directors, had spread upon the minutes a record of their acts and proceedings, that the bank had not been injured, and that the misappropriation, if it was such, was the act of the directors and therefore of the bank itself, and not of the employees covered by the policy.

The trial court obviously reached the conclusion that the action of the directors in declaring the alleged dividend was void, and that the payment of the funds involved to the stockholders and directors named was just as much a misappropriation of the bank's funds by the three officers and employees who made such payments as if they had done so of their own accord and without any authority from the board of directors. With this we cannot agree. It may be admitted that the dividend was not authorized by law, and that it was agreed to in advance by the directors concerned as found by the court. The control of the bank was in the hands of the directors. They occupied positions of trust in that capacity, and were personally accountable to creditors, to stockholders, and to the state banking commissioner for any mismanagement of the bank by them. But declaring dividends, passing upon loans, employing and directing the activities of their employees, are matters vested in them by law and the charter of the bank. In these respects the bank could act legally only through its board. Whatever may have

been their previous agreement as to the unauthorized dividend, their reasons for it, and the purposes of it, whenever the corporation's board of directors met in their official capacity as directors and among other things adopted a resolution declaring a dividend, which was spread upon the minutes, subsequently read at a regular meeting, approved and signed by the directors, and made a part of the official records of the corporation open to inspection, it became the official act of the corporation itself; and, even if admittedly illegal or unauthorized by law, it thus became the illegal act of the corporation, of which it cannot complain. Of course, any creditor, the state banking commissioner, any interested stockholder, or any director who did not agree to it could have complained, or could have held the directors responsible for such mismanagement of the bank's affairs; but none of these have done so.

■ The trial court found that Jennings was not present at the meetings of the directors when these matters transpired. Jennings so testified, but upon cross-examination stated that he did not remember to have been present. It was undisputed, however, that his name was signed in the midst of the directors' signatures to the minutes. He did not deny such signature, and the secretary of the board identified the signature as that of Jennings himself. Regardless of that, however, as a director of the bank it was his duty to know how the bank was conducted, and he was charged with what the minutes of the corporation, open to his inspection, showed; i. e., that the dividend had been declared. Seale v. Baker, 70 Tex. 283, 7 S. W. 742, 8 Am. St. Rep. 592. At no time did he ever complain of such dividend nor make any protest in the matter. The result as to him was therefore the same as if he had been present and approved the action of the board in declaring the dividend.

However unauthorized, illegal, or ill-advised the matter of declaring such a large dividend so soon after the bank was reorganized may have been, we think it was clearly a case of mismanagement of the bank, or a handling of the bank's affairs in an illegal manner by its board of directors in their capacity as such, a matter not insured against by appellant's policy, and not a defalcation, misappropriation, or misapplication of the bank's funds by employees of the bank acting as such.

■ Appellee contends, however, that because the dividend was declared for, and applied to, the payment of the directors' several individual debts to the bank, and that it was not distributed ratably to the stockholders in proportion to the amount of stock owned by each, it was for these reasons void in toto, and that, when the three officers and employees who initiated the matter paid out the funds involved it amounted to a clear misappropria-

tion by them of the funds of the bank. If the board of directors acting in their official capacity had undertaken, as the act of the bank, to distribute such dividend otherwise than in proportion to the stock owned by each, such act would of course have been void. But the official act of the board in this instance as contained in the minutes of the board has no such import. It purports to be regular in that respect. If the dividend had been legal otherwise, and after it was declared and set apart as a dividend, its unequal distribution among the stockholders by employees of the bank would not have been a misapplication of the bank's funds, but of a trust fund 'then belonging to the stockholders, of which they could have complained and could have had recourse against the guilty parties. Even though the three employees of the bank, themselves stockholders and directors, may have been instrumental in inducing the board of directors to declare an unauthorized dividend, when the board, which included four other stockholders, passed the resolution sitting as a board, the act then became that of the board and not of the employees of the bank. And in paying out the illegal dividend, they only carried out as employees of the bank the official, though illegal, action of the board. It was the board, therefore, we think, and not the employees who were guilty of the misappropriation of the funds in question. A case analogous in principle was presented in Citizens, etc., Bank v. National Surety Co. (Tex. Civ. App.) 242 S. W. 488, affirmed by Supreme Court in 258 S. W. 468.

Appellee further urges that, because the interests of the directors who participated in the transaction were adverse to that of the bank, they were disqualified to act and that their acts were therefore void, citing numerous authorities holding that in any contract between a director and a corporation, or transaction with it in which his interest is adverse to that of the corporation, he is disqualified. This is a general well-settled rule. Tenison v. Patton, 95 Tex. 284, 67 S. W. 92; Seale v. Baker, supra; McLendon Hdw. Co. v. Black (Tex. Civ. App.) 264 S. W. 1011; 6 Tex. Jur. 190, 198; 14A C. J. 118.

But such rule does not apply to a declaration of a dividend. That is not a contract with the corporation. If that were true, a board of directors could never declare a dividend because of necessity all are interested in and benefited by it. In the instant case, six of the seven directors who owed stock assessments borrowed the money elsewhere and paid it into appellee bank. When that was done their debt to that bank was discharged, regardless of their purposes and intentions with reference to recovering it back. Had the dividend complained of been set aside at the instance of other stockholders, a nonassenting director, a creditor, or the banking commissioner, their debt to the bank would have still been discharged, and they could not have recovered back the amounts paid in. Consequently no agreement between them could affect the validity of that payment, and the subsequent declaration of the dividend and its distribution among them must, so far as appellant is concerned, be treated as if their indebtedness to the bank had been in good faith fully discharged.

Under these facts and circumstances, we think this case, conceding that the dividend was unauthorized and that it was subsequently improperly distributed, presents one of official acts of the board of directors, charged with the management of the bank's affairs, in which the employees of the bank only carried out the action of the board, and were not themselves, as employees, guilty of misapplication of the bank's funds. The policy sued upon did not indemnify the bank against the mismanagement of its board of directors, which was the condition disclosed, we think, by the record in this case. What influences or what individuals induced such improper action, is, we think, immaterial so far as appellant's liability is concerned. The policy only purported to indemnify the bank against the dishonesty of its employees, acting in their capacity as employees, and not against acts on their part in carrying out the instructions of the board of directors arrived at in a regular meeting, however improvident or unauthorized that action of the board might be. When taken by the board in its official capacity as such, the action then becomes that of the bank, and without the terms of the policy.

For the reasons stated, the judgment of the trial court must be reversed, and judgment here rendered for appellant.

Reversed and rendered.